(No. 54292.—<span></span>

UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant, v. THOMAS C. ELDER *et al.,* Appellees.

*Opinion filed September 30, 1981.*

Michael W. Rathsack, of Chicago, for appellant.

John M. Burke, of Burke & Burke, Ltd., of Chicago, for appellee Thomas C. Elder.

MR. JUSTICE SIMON delivered the opinion of the court:

A vehicle cannot be a "replacement" vehicle under a policy of automobile insurance if the insured retains ownership of the "replaced" vehicle and if it remains operable. Although the insured may have intended to replace his

insured vehicle here, he had not done so by the time of the accident. The second vehicle was therefore an "additional" vehicle within the meaning of the policy.

The United Farm Bureau Mutual Insurance Company filed a declaratory judgment complaint in the circuit court of Cook County, seeking a declaration of the coverage of a policy of automobile insurance it issued to defendant Thomas C. Elder. The policy covered the vehicle it described, a 1974 Ford pickup truck, and extended to all newly acquired automobiles for which proper notice was given to the insurer. The notice requirements were one year for the insured to notify the insurer of the acquisition of a replacement vehicle, but only 30 days to tell it of the acquisition of an additional vehicle. The policy defined "newly acquired automobile" as:

"(1) a replacement automobile that replaces and is used for the same purpose as an owned automobile described in this policy, and

(2) an additional automobile acquired by the named insured and used for the same purpose as an owned automobile provided the company insures all automobiles owned by the named insured on the date of its delivery * * *."

The pleadings, depositions and affidavits on file reveal no dispute over what happened. In 1975, Elder applied for an insurance policy on his used 1974 Ford pickup truck. After the truck was inspected, the policy was issued by United and Elder used the truck as his personal vehicle, driving it to and from work. On June 4, 1976, Elder purchased a 1970 Volkswagen van. He made the purchase to see if he and his wife would like a van. His wife, who handled Elder's insurance matters, did not notify United. Both Elders thought that they had a year to notify the insurer of the purchase; they intended to use the Volkswagen for the same purpose as the Ford truck and so considered it a replacement vehicle.

In the succeeding weeks, Elder put the Ford truck up

for sale. At times it was parked in his garage; once Elder put vegetables from his small farm in the back and parked it next to the road to sell the vegetables. A "For Sale" sign was kept in the Ford's window. Several persons inquired about the truck, but none test drove it, and no one bought it. In the meantime, Elder occasionally drove the Ford around the farm to keep it in running condition. He did not drive it on the highway. Elder's neighbors confirmed that the truck was displayed for sale and said that they never saw it driven on the road.

While trying to sell the Ford, Elder used the Volkswagen van the same way he had been using the Ford. On September 11, 1976, before Elder could sell the Ford, the Volkswagen collided with another car and was wrecked. The accident occurred more than 30 days after the Volkswagen was purchased, and with no notice of its purchase having been given to United. After the accident, Elder again used his Ford, for which no buyer had ever been found, as a personal vehicle and for transportation to and from work.

The circuit court granted summary judgment to the insurer, holding that the Volkswagen was an additional automobile that was not covered because the insurer had not been given timely notice of the acquisition of an additional vehicle. The appellate court reversed, finding a genuine issue of material fact, and remanded for a factual determination of whether the Volkswagen was a replacement or an additional automobile (89 Ill. App. 3d 918). This court granted leave to appeal pursuant to Rule 315 (73 Ill. 2d R. 315).

The sole question is whether the Volkswagen was a replacement or an additional vehicle as defined in the policy. That question is one of law, to be determined by the court. When facts are undisputed, the question of whether those facts fall within the provisions of an insurance policy is a matter of interpretation, the province of the court rather

than the fact finder. (See, *e.g., Treolo v. Iroquois Auto Insurance Underwriters* (1932), 348 Ill. 93, 95-96.) This rule is a corollary of the more general statement that where the facts are not in dispute, their legal effect is a matter of law. (*St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 216.) Some courts have referred to the issue in this case as a mixed question of fact and law (see *State Farm Mutual Automobile Insurance Co. v. Shaffer* (1959), 250 N.C. 45, 51, 108 S.E.2d 49, 53), but that type of characterization should be sparingly applied. There is a mixed question only where there is some dispute over what happened—when the accident occurred, how the replaced vehicle was used or the like. Where the facts are clear, it is the responsibility of the court to rule on the legal effect of those facts (see *Beck Motors, Inc. v. Federal Mutual Insurance Co.* (Mo. App. 1969), 443 S.W.2d 200, 203), and there is no need for the services of a fact finder.

There is a five-part test for determining what is a replacement vehicle. To so qualify, the second vehicle (i) must be acquired after the policy was issued, (ii) the policy must not have expired before the acquisition, and (iii) the second vehicle must be acquired to replace the vehicle described in the policy, which must (iv) be disposed of or (v) incapable of further service at the time of replacement. (*State Farm Mutual Automobile Insurance Co. v. Shaffer* (1959), 250 N.C. 45, 52, 108 S.E.2d 49, 54; see also *Beck Motors, Inc. v. Federal Mutual Insurance Co.* (Mo. App. 1969), 443 S.W.2d 200, 203, and cases cited therein.) Typically the dispute settles on the last two requirements. If the first vehicle is sold or repossessed, then the second can be classed as a replacement. (*Nationwide Mutual Insurance Co. v. Mast* (1959), 52 Del. 127, 153 A.2d 893 (second semitrailer truck a replacement where, after experimenting with both, owner allowed first truck to be repossessed).) But if the first vehicle is retained, the second is an additional vehicle *unless* the first is physically inoperable at the time

the second vehicle is acquired. (*Young v. State Farm Mutual Automobile Insurance Co.* (1973), 18 N.C. App. 702, 198 S.E.2d 54 (Oldsmobile ambulance became mechanically inoperable and Mercury ambulance to which medical supplies and emergency equipment were transferred held to be a replacement); *Filaseta v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.* (1967), 209 Pa. Super. 332, 228 A.2d 18 (Chevrolet truck held to be replacement for Studebaker truck which broke down on turnpike, was towed to garage and whose load was transferred to the Chevrolet); *Merchants Mutual Casualty Co. v. Lambert* (1940), 90 N.H. 507, 11 A.2d 361 (1930 Pierce-Arrow was worn out, out of repair, and not fit to be driven on the highway, and a 1937 Pierce-Arrow was held to be its replacement).) If the original vehicle is physically operable, even if it is not licensed, the second vehicle cannot be considered a replacement. *National Farmers Union Property & Casualty Co. v. Nyborg* (1971), 290 Minn. 191, 195, 186 N.W.2d 702, 704; *Butler v. Government Employees Insurance Co.* (1971), 212 Va. 174, 176, 183 S.E.2d 147, 149; *Fitch v. Bye* (1970), 288 Minn. 344, 350, 180 N.W.2d 866, 870; *Beck Motors, Inc. v. Federal Mutual Insurance Co.* (Mo. App. 1969), 443 S.W.2d 200, 205.

The object of the test is to fulfill the intention of the parties at the time they agreed to the policy. They agreed that one vehicle would be insured, but the frequent exchange of motor vehicles in our society makes it desirable for some provision for automatic continuous coverage to be included. Nevertheless, the significant factor is that the insurer agreed to insure only one vehicle at a time, and should not be required to insure more unless it explicitly has agreed to do so (as here it did, though only for 30 days after the purchase). The test also discourages the shuffling of several vehicles under a single policy, a practice that could result in burdening the insurer with widely varying and uncontemplated risks. *Fitch v. Bye* (1970), 288 Minn. 344,

349, 180 N.W.2d 866, 870.

Although the insured's intention to replace a car is clearly relevant to the determination of whether the second vehicle was a replacement for the first, it is not the sole test. Mere intention to replace is not enough to turn a vehicle into a replacement automobile. (*Quaderer v. Integrity Mutual Insurance Co.* (1962), 263 Minn. 383, 390, 116 N.W.2d 605, 609.) Intention of the insured is important when asking why the second vehicle was acquired, but following the acquisition the insured must eliminate the risk the insurer has agreed to bear on the first vehicle before the coverage will transfer to the second as a replacement. A less stringent rule would place an almost impossible burden on the insurer to police whether the insured was in fact using more than one vehicle.

Under the five-part test, the Volkswagen was not a replacement vehicle. The Ford remained operable; in fact, Elder drove it on occasion specifically to keep it in running condition. Because he had not parted with ownership of the Ford, the Volkswagen could not be considered a replacement vehicle. It did not matter that Elder restricted the use of the Ford in the interim to his private property. Risks of operation remained even for that use, risks which United had agreed to bear and for which it was liable. Elder received the benefit of the insurance on his Ford for the time involved, and he cannot after 30 days with two vehicles also receive the benefit of insurance under the same policy for the Volkswagen.

*Nationwide Insurance Co. v. Ervin* (1967), 87 Ill. App. 2d 432, the only prior Illinois case on this point, is not inconsistent with this conclusion. In *Nationwide,* the transmission on the named vehicle went out and the insured purchased another vehicle. The named vehicle remained in the insured's driveway, the insured claiming that he did not have the $75 necessary to repair the transmission. The appellate court held that the second vehicle was not a

replacement. There was evidence that the named insured had not intended to replace the named vehicle with the second car and so it could not be considered a replacement vehicle even if the named vehicle was inoperable. But in addition the question of operability should not be seized upon as a shortcut for the full test of replacement. Minor problems with a named automobile do not convert an additional automobile into a replacement. See *Fitch v. Bye* (1970), 288 Minn. 344, 350, 180 N.W.2d 866, 870 ("It is not difficult to imagine the factual disputes which would emerge if *** the insured were permitted to secure coverage for a replacement vehicle simply because the described vehicle had a flat tire, a dead battery, or had run out of gasoline").

The Volkswagen was an additional automobile under the policy. No proper notice was given, and so it was not covered. United had no duties with respect to it.

The judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*