COMET CASUALTY COMPANY, Plaintiff-Appellee, *v.* JAMES B. HOLLOMAN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 82—0135

Opinion filed March 14, 1983.

Judge, Kurnik & Knight, Ltd., of Park Ridge (Andrew Kopon, Jr., and Vincent C. Cipolla, of counsel), for appellants.

Brian D. Alpert, of Chicago, for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:
Comet Casualty Company (Comet) filed suit for declaratory judgment regarding coverage of its policyholder, James Holloman. The trial court released Comet from its duty of coverage. Odell Walker, a defendant, has appealed.

This is a virtually agreed chronological factual statement:

July 17, 1977—Comet issued a liability policy on a Pontiac automobile owned by James Holloman.

September 12, 1977—Holloman also bought a Chevrolet automobile. He took no steps to accomplish application of the policy to the Chevrolet.

November 3, 1977—Holloman sold the Pontiac to his brother by endorsement of the certificate of title.

November 28, 1977—Holloman was involved in an automobile acci-

dent while he was driving the Chevrolet.

November 28, 1977—Holloman notified Comet's agent, the County Insurance Service, Inc., of the accident by telephone and requested amendment of the policy to substitute the Chevrolet automobile as a replacement car. In due course Comet issued a declaration to be appended to the policy showing: "Effective Date of Endorsement, November 29, 1977."

April 3, 1978—Suit was filed by Odell Walker against Holloman.

September 7, 1979—Suit was filed against Holloman by Patricia Sabella as administrator of the estate of her deceased husband. In due course Holloman filed a petition in bankruptcy.

September 19, 1980—Comet filed its motion for declaratory judgment.

I

Comet properly joined all interested parties. This included Holloman the policyholder, Odell Walker, and Patricia Sabella as administrator. In the appeal to this court, the only notice of appeal purports to be filed by Walker. Counsel for Walker have filed one brief which is labeled as being on behalf of "Defendants-Appellants." Comet first claims in this court that the notice of appeal filed only by Walker was ineffective to permit this court to review the rights of Holloman as regards the policy in question.

■ We find and conclude that this court has power "to make a complete adjudication of the issues" so that "all claims of error will be reviewed in this proceeding." (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 145, 281 N.E.2d 323. See also *William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1978), 62 Ill. App. 3d 842, 845-46, 379 N.E.2d 400.) As the supreme court has pointed out in *Schatz* (51 Ill. 2d 143, 145), a reviewing court is fully authorized by Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)) to " 'grant any relief *** that the case may require.' " (See also *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 520, 337 N.E.2d 23, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669.) We will therefore proceed to review the claims of error presented to us by the briefs.

II

The policy provides coverage to:

"A private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period, provided that the acquired automobile (1) replaces an auto-

mobile described in this policy, (2) that neither the named insured nor any resident of his household retains ownership of the described replaced automobile, and (3) that the named insured notified the company in writing within thirty days after the acquisition of his intention to make this policy applicable to such acquired replacement automobile."

In this court Odell Walker urges that the Chevrolet automobile which James Holloman was driving at the time of the accident was a "replacement automobile." He also urges that the record before us shows genuine issues of fact so that the motion for judgment on the pleadings should not have been allowed. Finally, he claims that the policy provision in question is ambiguous. On the contrary, Comet contends that the terms of the policy limit the definition of "replacement vehicle." Comet also cites the recent opinion of the Supreme Court of Illinois in *United Farm Bureau Mutual Insurance Co. v. Elder* (1981), 86 Ill. 2d 339, 343, 427 N.E.2d 127, which states a five-part common law test for the definition and requirements of the legal existence of a replacement vehicle:

"There is a five-part test for determining what is a replacement vehicle. To so qualify, the second vehicle (i) must be acquired after the policy was issued, (ii) the policy must not have expired before the acquisition, and (iii) the second vehicle must be acquired to replace the vehicle described in the policy, which must (iv) be disposed of or (v) incapable of further service at the time of replacement."

The supreme court in *United Farm* held the newly acquired vehicle was not a replacement car. This was because, there, the policyholder retained both cars in operable condition and he continued to use the original car. (86 Ill. 2d 339, 342.) In our opinion, application of the five-part test to the instant case leads clearly to the conclusion that the result reached in *United Farm* is not applicable here. Examining the test we conclude:

(1) The Chevrolet automobile, the second vehicle, was acquired by Holloman after Comet issued its policy.

(2) The policy did not expire before Holloman purchased the Chevrolet.

(3) The Chevrolet was acquired in a sense to replace the vehicle described in the policy as evidenced by the sale of the Pontiac automobile, the original car, from Holloman to his brother.

(4) After this sale the Pontiac automobile was completely disposed of.

(5) In this sense, the Pontiac was incapable of further service to

the policyholder at the time it was replaced by the Chevrolet.

Consequently we have reached the firm conclusion that under the five-part common law test the Chevrolet became a replacement vehicle within the technical definition of that term. On this basis we are required to conclude that Comet had a duty of coverage. However, it is next necessary to consider the policy provisions above quoted.

■ Examining the language of the policy provision, we conclude that it is not ambiguous so as to require extrinsic evidence. It has been repeatedly held that whether or not an ambiguity exists is a question of law for the court. If the writing is unambiguous the court must necessarily determine the intention of the parties solely from the language in the document itself. *Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 440, 413 N.E.2d 75. See also *National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 1049, 427 N.E.2d 806, *appeal denied* (1982), 88 Ill. 2d 551.

There is no need for extrinsic evidence to determine the meaning and intent of the policy provision before us. Since there is no ambiguity, this policy should be "read as any other contract, that is, according to the plain and ordinary meaning of its terms." *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378, 400 N.E.2d 921.

It seems to us that the problem is use of the word "acquisition" in fixing the time when Holloman intended to make his Chevrolet automobile a replacement for his former car, the Pontiac. "Acquisition" is defined as the "act of becoming the owner of certain property ***." (Black's Law Dictionary 23 (5th ed. 1979).) Thus, the term acquisition of an intention is not a proper use of the word "acquisition."

Analyzing the situation before us, it is clear that when Holloman bought the Chevrolet automobile on September 12, 1977, it became his property but, by the simple act of his purchase it did not become a "replacement automobile" under the legal meaning of the term. At that time the newly acquired Chevrolet was not covered by Comet's policy. It is equally clear that the 30-day grace period in the policy was not intended to commence to run at that time. Holloman may not then have considered or determined his use of the newly purchased car. A requirement that he make this decision within 30 days would be an unfair and impossible burden. Holloman had the legal right, of course, to buy the Chevrolet automobile, but it simply remained outside the protection of the Comet policy.

But, when Holloman sold the Pontiac to his brother on November 3, 1977, the Chevrolet became his only automobile. At that moment he had the policy option of acting within 30 days to make that car his replacement vehicle and to have it covered by the policy or to let the

policy lapse. Thus, Comet was never subjected to the risk of insuring more than one car. It cannot be doubted from reading this policy provision that the 30-day grace period is intended to commence running not from the date upon which Holloman bought his second car but upon the date that the car became an actual replacement for his original automobile.

■ Applying these thoughts to the policy provision before us, the Chevrolet did not become "such acquired replacement automobile" until the sale of the Pontiac to Holloman's brother. Therefore the 30-day period did not commence to run until November 3, 1977, which was the date of that sale. Holloman therefore had 30 days from and after the sale of the Pontiac within which to notify Comet of the existence of the replacement automobile. Consequently, Holloman is in the position of having complied with the grace period even though the accident in question had already occurred.

Consequently the order appealed from is reversed and the cause is remanded with directions that an order be entered finding that the policy issued by Comet was applicable to the defense of the present pending personal injury actions involving the parties hereto. We wish to make it clear that all other factors here remain subject to the reservation of rights filed by Comet.

Reversed and remanded with directions.

BUCKLEY, P.J., and CAMPBELL, J., concur.