HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, Plaintiff,

v.

Mary NEFF, Administrator of the Estate of Janice Dean, Deceased, General Motors Acceptance Corporation, a corporation, Scott G. Boothe, Laurie J. Boothe, S.G. Boothe, Jr., and United States of America, Department of Navy, Defendants.

Mary NEFF, Administrator of the Estate of Janice Dean, Deceased, Third Party Plaintiff,

v.

RALEIGH, MANN & POWELL, INC., a corporation, Pauly Pontiac-Honda-GMA, Inc., a corporation, Bank of California, a banking institution, Third Party Defendants.

No. 84 C 0859.

United States District Court,
N.D. Illinois, E.D.

Aug. 29, 1984.

On Motion to Reconsider
Sept. 20, 1984.

Stephen Sonderby, Haskell & Perrin, Chicago, Ill., for plaintiff.

Mary Particia Benz, Phelan, Pope & John, Chicago, Ill., for Bank of California.

James Kubik, Asst. U.S. Atty., Chicago, Ill., for defendants.

David A. Decker, Waukegan, Ill., for Boothes.

Elsie Holzwarth, Chicago, Ill., for Mary Neff.

Michael L. Sherman, Chicago, Ill., for General Motors Acceptance Corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

In this diversity action the plaintiff Hartford Accident and Indemnity Company ("Hartford") seeks a declaration that it owes no duties to defendant Mary Neff ("Neff") under an automobile insurance policy. The parties have filed cross-motions for summary judgment and supporting memoranda.[1] For the reasons set forth below, we deny Hartford's motion for summary judgment, grant Neff's motion and dismiss the case as to all remaining parties.

### Facts

On December 9, 1982, Neff's decedent Janice Dean ("Dean") was killed in a car accident which allegedly injured defendants Scott G. Boothe, Laurie J. Boothe and S.G. Boothe, Jr. ("the Boothes"). This suit centers about whether Hartford owes Neff any duty under the provisions of an automobile insurance policy ("the policy") it issued to Dean on August 8, 1977. The parties agree to the following relevant facts. Premiums were due twice a year on the policy, on August 8 and February 8, and each payment automatically extended coverage for six months. Dean apparently made all of the required payments, including a payment due August 8, 1982. As of February 11, 1982, the scheduled automobile on the policy was a 1972 Oldsmobile ("the Olds"). On July 1, 1982, Dean bought a 1982 Pontiac ("the Pontiac"). Dean did not notify Hartford of the purchase, but no provision in the policy requires her to do so. When Dean paid the premium due on August 8, 1982, Hartford confirmed the automatic continuation of the policy until February 8, 1983, in a form which listed the Olds as the insured car.

On September 9, 1982, Dean sold the Olds, without notifying Hartford of the sale.

On December 4, 1982, while driving the Pontiac, Dean collided with a car driven by Scott C. Boothe. The accident killed Dean, damaged her car and allegedly injured the Boothes. The Boothes sued Dean's administratrix, Neff, in Illinois state court. Hartford initially declined to defend Neff in the *Boothe* suit, but has since done so under a reservation of rights. It filed the instant lawsuit in state court, seeking a declaration that the policy did not cover the Pontiac at the time of the accident, and that Hartford therefore has no duty to defend the *Boothe* suit or satisfy any judgment in that suit. The case was eventually removed to this Court, and jurisdiction is now founded on 28 U.S.C. § 1332.[2]

### Opinion

Summary judgment is appropriate where there are no genuine issues of material fact relevant to judgment in movant's favor. *See Big O Tire Dealer's, Inc. v. Big O Warehouse, et al.,* 741 F.2d 160 at 163 (7th Cir.1984). "With the ever-increasing burden upon the judiciary, persuasive reasons exist for the utilization of the summary judgment procedure whenever appropriate." *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 560 (7th Cir.1970). Because the parties agree to the material facts, the summary judgment vehicle is appropriate, and we now consider the parties' legal arguments.

### A.

The controversy about coverage revolves around whether the Pontiac was an "owned automobile" under the policy; this in turn depends on whether the Pontiac was a "replacement vehicle" for the Olds. The policy covers "owned automobiles," which may

---

1. We have considered Hartford's motion to strike the memorandum filed by the third party defendant Bank of California and believe it to be without merit.

2. Hartford's state court complaint named as defendants several creditors against Dean's estate, including the Navy, which had paid Scott Boothe's medical expenses after the accident. The Navy removed the case to this Court, and we later granted its motion to dismiss Hartford's claim against it. Hartford amended its complaint to allege complete diversity between itself and the remaining defendants, and the Court's jurisdiction is not contested.

include a "replacement automobile," as defined below. An "owned automobile" is:

(a) a private passenger farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

A "replacement car" is:

(c) a private passenger, farm or utility automobile ownership of which is *acquired by the named insured during the policy period,* provided

(1) it replaces an owned automobile as defined in (a) above.

(Emphasis added). Hartford argues that the Pontiac was not "acquired ... during the policy period" of the accident and thus cannot be a "replacement car" entitled to coverage under the policy. It reasons first that Dean "acquired" the Pontiac on July 1, 1982, when she bought and financed it. Next Hartford argues that "the policy period" means only that six-month premium period during which the replacement car is acquired. Hartford concludes that because Dean "acquired" the Pontiac on July 1, 1982, she did so during "the policy period" ending August 8, 1982, and thus the car was not covered during the "next" policy period, which included the time of the accident. We believe that Hartford's reasoning is contrary both to Illinois law [3] and the most sensible construction of the policy.

The analysis pivots about the terms "acquired" and "policy period." Recently, an Illinois court defined "acquired" in a suit which closely resembles the present one.

*Comet Casualty Co. v. Holloman,* 113 Ill. App.3d 271, 446 N.E.2d 1263 (1983). The defendant in *Comet* had owned a Pontiac which Comet had insured. Like Dean, he bought a second car, without notifying Comet, and then he sold the first car a few months later. Shortly thereafter, he had an accident in the second car. Like Hartford's policy, Comet's policy required that the second car must have been "acquired ... during the policy period" in order to be a "replacement vehicle" entitled to coverage.[4] The court held that the second car was not "acquired" as a replacement vehicle until the first car had been sold. Until that sale, only the first car was covered by the policy, and thus Comet "was never subjected to the risk of insuring more than one car." 113 Ill.App.3d at 276, 446 N.E.2d at 263.[5] Under *Comet's* definition of "acquisition," Dean did not "acquire" the Pontiac within the meaning of the policy until she sold the Olds in September. Thus, even if we accept Hartford's narrow definition of "the policy period," Dean "acquired" the Pontiac during "the policy period" which embraced the accident, that is, between August 8, 1982, and February 8, 1983. *See also Sentry Insurance v. Hogan,* 111 Ill.App.3d 638, 444 N.E.2d 761 (1982) (also holding that a second car was "acquired" when it "replaced" a first car, even though it had been purchased months earlier). As such, the Pontiac was an "owned automobile" under the policy, and Hartford owes Neff the duties spelled out in the policy.

---

**3.** Of course, because this is a diversity action, Illinois choice of law rules apply. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In their memoranda the parties assumed without discussion that Illinois' substantive insurance law controls this case. This assumption is reasonable under Illinois choice of law rules because Illinois is the state most significantly related to the dispute: the insured was domiciled in Illinois, the relevant insured cars were registered and primarily driven in Illinois, the accident happened in Illinois and the *Boothe* personal injury suit was filed in Illinois. *See Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 528, 322 N.E.2d 454, 457–458 (1975).

**4.** The one difference between the Comet and Hartford policies is that Comet required the

insured to notify Comet within thirty days. This distinction between the policies is not material to this case. Hartford argues that Dean's failure to notify it of the change of cars precludes Neff from receiving coverage. But Hartford has not pointed to any provision in the policy requiring notice, and we will not imply one.

**5.** In so holding, the Court interpreted and applied the Illinois Supreme Court's five part test for defining a "replacement vehicle." *See United Farm Mutual Ins. Co. v. Elder,* 86 Ill.2d 339, 343, 56 Ill.Dec. 47, 49, 427 N.E.2d 127, 129 (1981). We hold that the Pontiac satisfies the *Elder* test, as interpreted by the *Comet* court.

### B.

Even if Dean "acquired" the Pontiac when she bought it in July 1982, we believe the car was nevertheless covered at the time of the accident because Hartford's reading of "the policy period" is unduly restrictive. Before addressing this issue, we must establish our standard of review of the policy. In interpreting the insurance contract, "the court's primary concern is to effectuate the intent of the parties as expressed by the contract." *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App.3d 250, 255, 58 Ill.Dec. 609, 614, 430 N.E.2d 641, 646 (1981). The Court cannot create an ambiguity where none exists in the policy, *see, e.g., id.*, but any ambiguity which does fairly exist must be construed in favor of the insured in order to effectuate "the predominate purpose of the contract which is to indemnify the insured." *Id., citing, Dora Township v. Indiana Ins. Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 400 N.E.2d 921 (1980); *see also Menke v. County Mutual Ins. Co.*, 78 Ill.2d 420, 423, 36 Ill.Dec. 698, 700, 301 N.E.2d 539, 541 (1980). Similarly, "if an insurance contract contains inconsistent or conflicting clauses, the clause which affords the greater or more inclusive benefit for the insured will govern." *Sentry Insurance v. Hogan*, 111 Ill.App.3d 638, 640, 444 N.E.2d 761, 763 (1982). We now consider Hartford's argument in light of these standards.

We believe that the meaning of "policy period" is ambiguous, and, in accordance with the above cases, we construe the ambiguity to favor the insured, Dean. The policy does not expressly define "policy period" as it is used in the "replacement vehicle" clause quoted earlier. In its most straightforward and simple sense, the phrase "acquired during the policy period" would mean that a car is covered as a replacement vehicle so long as it is acquired while the policy is in force. On the other hand, the section of the policy titled "Policy Continuation," also uses the term "policy period" and seems to contemplate the narrower reading of that phrase:

This policy shall expire ... except that it may be continued in force for successive policy periods by the payment of the required continuation premium in advance of such period.... Each such policy period shall be for the declared number of calendar months.... The premium shown in the policy is for the stated policy period.

This "Continuation Clause" conflicts with the "replacement clause." The purpose of the replacement clause is to facilitate transfer of cars while providing continuous coverage. *See United Farm Bureau Mutual Ins. Co. v. Elder*, 86 Ill.2d 339, 344, 56 Ill.Dec. 47, 50, 427 N.E.2d 127, 130 (1981). Similarly, the continuation clause translates premium payment periods into one continuous period of policy coverage. But both clauses contain the term "policy period," which is susceptible of a narrower reading under which the policy provides segmented rather than continuous coverage.

We resolve the ambiguities and inconsistencies in Dean's favor and hold that the phrase "the policy period" in the replacement clause means the continuous period when the policy is in effect. Thus, Dean was covered in December 1982 when her Pontiac collided with the Boothes, and Hartford has the duty under the policy to defend Neff in the *Boothe* suit and to pay any claim arising out of the policy. This construction not only adheres to Illinois courts' principles, it simply makes more sense than Hartford's reading. Hartford essentially argues that the Pontiac would have been covered only from July 1, 1982, until August 8, 1982. After that, coverage would have lapsed, even though Dean had sent in a premium to maintain so-called "continuous coverage." Our reading fulfills the parties' fundamental intent to have *one* car covered continuously; Dean paid to insure one car continuously, and Hartford was never at risk for more than one car at a time. *See Elder*, 86 Ill.2d at 344, 56 Ill.Dec. at 50, 427 N.E.2d at 130; *Comet*, 113 Ill.App.3d at 275–76, 446 N.E.2d at 869; *Sentry Insurance*, 111 Ill.App.3d at 640–641, 444 N.E.2d at 763 (all three cases

construing replacement clauses to fulfill intent of continuously exposing insurance company to risk for one car).

Accordingly, we deny Hartford's motion for summary judgment, allow Count II of Neff's motion for summary judgment and dismiss the case as to all remaining parties. In light of our disposition, we need not address Count I of Neff's motion or third-party defendant GMAC's motion for summary judgment. It is so ordered.

## ON MOTION TO RECONSIDER

The motion of plaintiff Hartford Accident and Indemnity Company ("Hartford") to reconsider our opinion and judgment entered August 29, 1984, is denied for the following reasons.

The sections of Hartford's motion which question our interpretation of the term "policy period" and argue that at a minimum more facts were needed to resolve the issue appear to have some merit. However, we need not finally reconsider that part of our opinion (Part B, at 319–321) because we reaffirm the remainder of the opinion (Part A, at 318–320),[1] which was itself sufficient to decide the case and which Hartford did have an opportunity to fully brief.

Our holding in Part A relied upon *Comet Casualty Co. v. Holloman*, 113 Ill.App.3d 271, 446 N.E.2d 1263 (1983), which construed a policy that used the word "acquired" exactly as Hartford's does;[2] moreover, the facts in *Comet* closely parallel those in this case. Hartford's motion to reconsider does not persuade us that *Comet* is distinguishable. Nor is the motion correct when it asserts that we failed to apply the five-part common law test of a replacement vehicle, set forth in *United Farm Mutual Ins. Co. v. Elder*, 86 Ill.2d

339, 343, 56 Ill.Dec. 47, 49, 427 N.E.2d 127, 129 (1981). *See* at 319, n. 5. Not only do we follow *Comet*'s application of the *Elder* test to these facts, we observe that the *Elder* court's analysis of its facts also supports our holding. The *Elder* accident occurred while the insured still had both cars in operable condition. The insured was denied coverage because by retaining both cars he was subjecting the insurer to double risk, contrary to the original intent of the parties. The court stated that the insured's subjective intention that the second car be a replacement would not justify coverage unless the first car was eliminated as a risk to the insurer. 86 Ill.2d at 345, 56 Ill.Dec. at 50, 427 N.E.2d at 130. This statement implies, as *Comet* later held, that once the risk on the first car is eliminated, the second car could qualify as a replacement. Here, as in *Comet*, this risk was eliminated with the sale of the first car. Accordingly, we reaffirm our holding that Dean "acquired" the Pontiac as a replacement when she sold the Olds. Because this holding means that the Pontiac was covered at the time of the accident, it alone is dispositive of the case.

The judgment shall remain undisturbed. It is so ordered.

---

1. Part A held that under Illinois law the insured, Dean, "acquired" the Pontiac as a "replacement vehicle" within the meaning of the policy when she sold the Olds in September. Thus, assuming that Hartford's definition of "policy period" is correct, Dean "acquired" the Pontiac during the policy period embracing the accident, and so the Pontiac was covered when the accident occurred.

2. Both policies contained the following definition of a "replacement car":

     A private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period, provided [it] replaces an owned automobile....