CANAL INSURANCE COMPANY, a corporation, Plaintiff,

v.

Lavon MOORE, d/b/a Moore's Trucking; Barry Ladner, Shirley Tate and Linda Tanner, Defendants.

Civ. A. No. S88–0316(R).

United States District Court, S.D. Mississippi, S.D.

Oct. 18, 1989.

Frank D. Montague, Jr., Montague, Pittman & Schwartz, Hattiesburg, Miss., for plaintiff.

Jim Davis Hull, Moss Point, Miss. and George W. Murphy, Parlin & Murphy, Ocean Springs, Miss., for defendant, Linda Tanner.

D. Neil Harris and Brent M. Bickham, Pascagoula, Miss., for defendant, Shirley Tate.

Jack Parsons and Rebecca Cartledge Taylor, Parsons & Matthews, Wiggins, Miss., for defendant, Lavon Moore, d/b/a Moore's Trucking.

MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause comes before this Court on the following Motions: plaintiff's Motion for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202; defendant Moore Trucking's Motion for Summary Judgment; plaintiff's Cross–Motion for Summary Judgment; defendant Linda Tanner's Motion for Summary Judgment; and defen-

dant Shirley Tate's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Facts

It is uncontested that on or about April 10, 1987, Canal Insurance Company issued its basic automobile liability policy No. 15 31 36 to the defendant Lavon Moore d/b/a Moore's Trucking. The policy period under consideration extended from April 10, 1987 to April 10, 1988 at 12:01 a.m.

The policy provided, among other things, liability coverage for Moore's Trucking and described the following two vehicles as "owned automobiles":

(a) 1978 White Tractor, No. MTRHH0212004;

(b) 1977 International Tractor, No. L2327GGA18182

On or about July 24, 1987, Moore's Trucking purchased and titled a 1977 Freightliner tractor, No. CA213HL072269, which was immediately leased to Cheetah Transportation, which provided insurance on the vehicle.

In October, 1987, within the policy period, the 1978 white, described on the policy as an "owned automobile" became inoperable and on October 12, 1987, was sold for parts or salvage.

By sworn affidavit, Mizell Smith, the area representative for Cheetah Transportation, stated that the lease on the 1977 Freightliner between Cheetah and Moore's Trucking was terminated effective September 30, 1987.

There were two vehicles on the subject policy and at no time were there more than two vehicles in service by Moore's Trucking.

An accident took place on or about December 23, 1987, in Moss Point, Mississippi, involving the 1977 Freightliner, which was being driven by defendant Barry Ladner, an employee of Moore. The defendants Shirley Tate and Linda Tanner allegedly sustained injuries and losses in that accident and have filed separate complaints in the Circuit Court of Jackson County, Mississippi.

The defendant Lavon Moore d/b/a Moore's Trucking called upon the plaintiff to defend him in the aforementioned civil actions which the plaintiff is presently doing under reservation of rights.

While it is in dispute as to what specifically was said concerning coverage or amendment thereof, it is admitted that on December 23, 1987, shortly after the accident involving the Freightliner and Tate/Tanner vehicle, Lavon Moore called Canal and so advised Cindy Compston as to the truck and driver involved.

### Argument

As stated previously, this action came before this Court by plaintiff's Motion for Declaratory Judgment; however, due to the subsequent filing of Motions for Summary Judgment on the same issues, this Court chooses to dispose of the matter by ruling on the Motions for Summary Judgment.

The determinative issues in this case are:

(1) Did the terms of the subject policy require notification of the driver's identity?

(2) Was the 1977 Freightliner a newly acquired automobile under the terms of the policy?

(3) What effect, if any, did the presence of the Cheetah Transportation decal have upon coverage under the subject policy?

These issues are treated hereinafter in order.

1. *Did the terms of the subject policy require notification of the driver's identity?*

██ The plaintiff argues that it should not be ordered to provide coverage under the policy because Moore "waited until after the accident to make a specific request for a policy enforcement by reporting to Canal the identity of the new driver, and the make, model and serial number of the vehicle."

The defendant Moore counters by asserting that a perusal of the policy in question and the testimony of Canal's agent, Lucinda S. Compston, demonstrate that no notification of the driver's identity is necessary.

By deposition Mr. Lavon Moore testified that when he initially took out the policy in April, 1977 it covered three drivers to-wit: Ellis L. Moore, James O. Strickland and Charles E. Overstreet, and this is verified by an exhibit which appears to be part of the original application.

By her deposition Lucinda S. Compston testified that she was not aware of any provision in the policy that requires the insured to name the driver and that she did not make Mr. Moore aware of such requirement in writing. Ms. Compston further testified that had she been notified of a change in drivers, she would have typed a memo to the company who would have run a motor vehicle report (MVR) and if the MVR revealed any "chargeable" violations, these charges would be assessed to the insured. If there were any D.U.I.'s, the driver would be excluded.

Ms. Compston stated that "when the insurance company started having a problem with drivers driving vehicles and not being added, and having accidents, they fixed up a form and sent it out with all policies, requiring drivers being added." She could not stipulate that this had been done for the policy in question.

The plaintiff relies heavily upon the last paragraph on the first page of the Application for Commercial Motor Vehicle Insurance which, as set out in plaintiff's brief, provides:

I hereby certify that the information above is true and agree that a misrepresentation of any of the facts by me will constitute reason for the company to void or cancel any policy issued on the basis of this application, and will hold the company harmless for the action taken. I also agree that *if a policy is issued pursuant to this application, the application and any elections or rejections, which are included on the application and signed by me, shall become a part of the policy.* (emphasis added)

The plaintiff also relies upon the language of the policy which, as set out in the first paragraph of the second page of the policy states that "Canal Insurance Company ... [in] consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the named insured as follows."

Further, in support of this point, the plaintiff cites paragraph 11 of the conditions which states:

Declarations: By acceptance of this policy, the name insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

The plaintiff would urge this Court to find, by inference, that the foregoing language coupled with selected testimony as to what was allegedly told to Moore by Ms. Compston is legally effective in making notification of change of driver a sine qua non of coverage.

This Court does not find the plaintiff's argument on this point to be compelling.

2. *Was the 1977 Freightliner a newly acquired automobile under the terms of the policy?*

The pertinent policy language relied upon by both sides as set out in VII Additional Definitions is:

"owned automobile" means either

(a) an automobile which is owned by the named insured and described in the declaration;

(b) an automobile ownership of which is newly acquired by the named insured during the policy period, provided

(i) it replaces an owned automobile as defined in (a) above,

or

(ii) the company insures all automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within thirty days thereafter of his election to make this and no other policy issued by the company applicable to

such automobile and pays any additional premium required therefore;

The plaintiff seeks to negate the effect of subpart (b)(i) by arguing a lack of "intent" on the part of Moore when purchasing the Freightliner to have it replace the subsequently scrapped 1978 white tractor. In support of this argument, the plaintiff cites Moore's leasing of the Freightliner to Cheetah Transportation during the period that the 1978 white tractor was serviceable.

The plaintiff expresses a fear that to allow such practice as indicated herein to qualify under the "newly acquired" provision would open a floodgate of fraud in the area of replacement vehicles.

It seems to this Court that following the plaintiff's argument on this point would have necessitated that Moore divest itself of any legal title to the Freightliner and reacquire it as a replacement in order to qualify as a newly acquired automobile.

This Court is not persuaded that the purchase of a vehicle by a business whose primary assets are trucks used in hauling, followed by the temporary leasing of the vehicle for the purpose of hauling, necessarily negates any possibility of coincidental intent to later use that vehicle to replace another when necessary.

In her deposition, Ms. Compston testified that when one vehicle is used to replace another, there is no change in coverage; no greater exposure to the insurance company; and that all that is done is a bookkeeping change.

This Court is cited to several cases purporting to be authority on the issues raised; however, this Court finds only two persuasive.

The case which is most factually close is *Comet Casualty Co. v. Holloman*, 113 Ill. App.3d 271, 68 Ill.Dec. 866, 446 N.E.2d 1263 (1983). In *Comet* an automobile was insured under a policy and during the term of the policy another vehicle was purchased by the insured but the second vehicle was not listed as an insured vehicle under the policy. During the term of the policy the listed vehicle was sold and the insured drove the replacement vehicle. Following an accident with the replacement vehicle, the insured sought coverage under the policy. The Court in finding coverage set out a five-part common law test as to what constitutes a replacement vehicle. According to this test the second vehicle:

(1) must be acquired after the policy was issued;

(2) the policy must not have expired before the acquisition; and

(3) the second vehicle must be acquired to replace the vehicle described in the policy, which must

(4) be disposed of or

(5) incapable of further service at the time of replacement.

As pointed out by the plaintiff, the *Comet* policy contained a thirty-day grace period and while the plaintiff seeks to make this distinction controlling, this Court is of the opinion that under the terms of the subject policy, the thirty-day provision only applies to fleet coverage as set out in subpart (b)(ii) which this Court does not find to be applicable to the facts of this case.

The defendant Moore also cites as authority *Davis v. Sholte*, 459 So.2d 136 (La. 1984). In *Davis* the policyholder listed two vehicles under a policy and during the term of coverage purchased a third vehicle with the intent to restore it. Shortly after restoration of the replacement vehicle the insured sold one of the covered vehicles and began using the restored vehicle. This vehicle was involved in a collision and the insurer denied coverage. Interpreting similar provisions, the Louisiana court found coverage.

The plaintiff urges this Court to see *Davis* as supporting the concept of intent as a requirement to determining replacement status. As the defendant Moore points out, however, the insured in *Davis* expressed only an intent to restore, not necessarily an intent to replace.

This Court adopts the language of the court in *Comet, supra*, wherein it is stated:

There is no need for extrinsic evidence to determine the meaning and intent of the policy provision before us. Since there is no ambiguity, this policy should

be 'read as any other contract, that is, according to the plain and ordinary meaning of its terms.' *Dora Township v. Indiana Insurance Co.,* (1980), 78 Ill.2d 376, 378, 36 Ill.Dec. 341. 400 N.E.2d 921.

*Id.* 68 Ill.Dec. at 877, 446 N.E.2d at 1274.

3. *What effect, if any, did the presence of the Cheetah Transportation decal have upon coverage under the policy?*

 If there was any factual dispute as to whether the Freightliner was still under lease to Cheetah Transportation, then this Court would consider the presence of a decal to be noteworthy.

The defendant Moore puts this issue to rest by an affidavit of Mizell Smith, area representative for Cheetah Transportation Company. Mr. Smith testified that the subject lease was terminated effective September 30, 1987, and in support thereof produced a copy of the termination confirmation from the records of Cheetah Transportation Company.

In conclusion, this Court finds that:

(1) the defendant Moore Trucking only had two vehicles insured under the plaintiff's policy No. 15 31 36 at any one time;

(2) the 1977 Freightliner became a newly acquired vehicle by virtue of the disposal of the 1978 white tractor and termination of the lease with Cheetah Transportation Company during the term that the policy was in force; and

(3) the failure of Moore to inform Canal as to change of driver, in the absence of written requirements made a part of the policy to that effect, did not destroy coverage.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment of the defendants should be GRANTED; and the Motion for Summary Judgment of the plaintiff should be DENIED.

SO ORDERED this the 18th day of October, 1989.