In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3406

Donald R. Wild and Diana H. Wild,

Plaintiffs-Appellants,

v.

Subscription Plus, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C 67--Barbara B. Crabb, Chief Judge.

Argued April 18, 2002--Decided May 31, 2002


   Before Flaum, Chief Judge, and Harlington
Wood, Jr., and Posner, Circuit Judges.

   Posner, Circuit Judge.  This is a
personal injury suit brought by the
parents of a young man killed in an
accident in Wisconsin. Federal
jurisdiction is based on diversity of
citizenship. The suit was filed
originally in a federal district court in
Louisiana, but the judge there
transferred the case to a federal
district court in Wisconsin, pursuant to
28 U.S.C. sec. 1406(a), because he
determined that Louisiana was not a
proper venue for suing all--or in fact
any--of the defendants. The district
judge in Wisconsin denied the plaintiffs'
motion to retransfer the case to
Louisiana and later granted motions to
dismiss or for summary judgment filed by
several of the defendants. The other
defendants having settled, the district
court entered a final judgment
terminating the litigation and sparking
this appeal. The principal though not
only issue is the lawfulness of the
transfer from Louisiana to Wisconsin; if
as the plaintiffs contend it was
unlawful, the motion to retransfer should
have been granted.

   We note initially a serious deficiency
in the jurisdictional statement in the
plaintiffs' brief that went unnoticed in
the four briefs filed by defendants. With

regard to the insurance-company defendants, the allegation of citizenship takes the following form: "Progressive Northern Insurance Company, a citizen of the State of Wisconsin, with its principal place of business in the State of Ohio." (The allegations regarding the other insurance companies are identical except for name and states.) The diversity statute states that a corporation is a citizen of both the state in which it is incorporated and the state in which its principal place of business is located. 28 U.S.C. sec. 1332(c)(1). If a firm is not a corporation, its citizenship is determined by the citizenship of its proprietor, partners, members, or other principals. Carden v. Arkoma Associates, 494 U.S. 185, 195 (1990); Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998); Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 316 (7th Cir. 1998); Herrick Co. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001); Schiavone Construction Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996). The plaintiffs' jurisdictional statement does not allege that Progressive Insurance Company or any of the other insurance-company defendants is a corporation--though inquiry of counsel revealed that they are and that the requirement of complete diversity of citizenship is satisfied, with two possible exceptions:

The corporate charter of one of the defendants had been revoked before this suit was brought; and though the charter was later restored, jurisdiction is normally determined as of the date of the filing of the suit. The only case we can find on the precise question, and it happens to be a decision by this court, allows retroactive reinstatement to confer jurisdiction, Costain Coal Holdings, Inc. v. Resource Investment Corp., 15 F.3d 733, 734 and n. 3 (7th Cir. 1994), contrary to (and without discussing) the general principle (an exception is discussed below) that jurisdiction is determined as of the date of the suit; and on that date, before reinstatement, the corporation had no corporate charter.

An approach consistent with the general principle, but which leads to the same result in this case as the approach in

Costain would, makes the question of what state a corporation is a citizen of if its corporate charter has been revoked depend on the status of such an entity under the law of the state that granted (and later revoked) the charter. Most states sensibly permit a corporation whose charter has been revoked to continue nevertheless to operate as acorporation, specifically for purposes of suing and being sued, until it is actually dissolved. See, e.g., Paper Systems Inc. v. Mitsubishi Corp., 193 F.R.D. 601, 607-08 (E.D. Wis. 2000); Clipper Air Cargo, Inc. v. Aviation Products Int'l, Inc., 981 F. Supp. 956, 958-59 and n. 3 (D.S.C. 1997); Illinois Central Gulf R.R. v. Arbox Three Corp., 700 F. Supp. 389, 390-91 (N.D. Ill. 1988). Oklahoma, the state of incorporation of the defendant in question (Subscription Plus), is one of those states. 18 Okla. Stat. sec. 1099; Polk v. Unknown Trustees, Successors & Assigns of Three-In-One Oil & Gas Co., 298 P.2d 432, 435-36 (Okla. 1956) (per curiam). And, for icing on the cake, Oklahoma also has a statute making reinstatement of a corporation's charter retroactive. 18 Okla. Stat. sec. 1120(E). We conclude that the revocation of Subscription Plus's corporate charter did not affect its status for diversity purposes.

The complaint describes another defendant, Mutual Fire and Automobile Insurance Company, as a "foreign insurer authorized to conduct business in Louisiana"--which says nothing about where its principal place of business is (or its state of incorporation, but we have learned that it is Ohio, an answer that does not destroy complete diversity). In the plaintiffs' brief on appeal, Mutual is described as "a citizen of a state other than Louisiana, with its principal place [of business?] in a State other than Louisiana." But how can the plaintiffs know that the company's principal place of business is not in Louisiana if they don't know where its principal place of business is? We doubt that the plaintiffs conducted a census of all businesses whose principal place of business is in Louisiana and discovered that Mutual Fire and Automobile Insurance Company is not one of them. No matter. The company was later dropped as a party, and under Newman-Green, Inc. v. Alfonzo-

Larrain, 490 U.S. 826, 837 (1989), a want of complete diversity can be cured by dropping the party that made diversity incomplete.

With subject-matter jurisdiction secure, we turn to the transfer issue and the merits, first sketching in the factual background.

Subscription Plus, owned and operated by a woman named Karleen Hillery, is engaged in the business of processing magazine subscriptions. It contracted with Y.E.S.!, a sales agency, to secure magazine subscriptions for Subscription Plus. The Wilds' son Joseph was a salesman employed by Y.E.S.! The Wilds live in Louisiana, and Joseph Wild was hired there.

The salesmen would travel in groups in vans to various states to sell subscriptions. Y.E.S.!'s owner, Lane, bought a green van and employed a man named Holmes to drive it. (The color turns out to be relevant, as we'll see later but can ignore for now.) While driving the sales crew in Wisconsin after a day of door-to-door subscription selling, Holmes, noticing that he was being pursued by a police car and not having a valid driver's license, tried to switch seats with one of the passengers, lost control, and crashed the van. Seven members of the sales crew, including young Wild, were killed and the others injured. Suits were brought on behalf of all the victims except Wild in a Wisconsin state court, where the suits were consolidated and are pending. Besides suing Hillery, Lane, Holmes, Subscription Plus, Y.E.S.! and the dealership that sold the van, the Wilds sued the liability insurers of these defendants; it could do this because Louisiana, like Wisconsin, is a direct-action state, meaning that a tort plaintiff can sue his injurer's liability insurer as well as the injurer.

Section 1406(a) of the Judicial Code provides that if a suit is brought in a district that is not a proper venue under 28 U.S.C. sec. 1391, the judge can transfer it to any district "in which it could have been brought." The district judge in Louisiana found that venue in this diversity suit was not properly laid in Louisiana because none of the

defendants resided there or could be served there (or elsewhere under Louisiana's long-arm statute) and "a substantial part of the events or omissions giving rise to the claim" had not taken place there either. 28 U.S.C. sec. 1391(a)(2). There is no serious contention that the judge erred in this ruling or that the Western District of Wisconsin is not a district in which venue can be laid, at least with regard to most of the defendants (and possibly all, as we're about to see). The accident occurred there, and it is clearly the most convenient site for the litigation. All the other suits growing out of the accident have been consolidated there, and while there is no procedure for consolidating those suits with the Wilds' suit because those suits are in state court and the Wilds' suit is in federal court, at least the defendants--who are the same in all the suits, including the Wilds' suit--can localize their defense efforts to one state, minimizing travel time for their lawyers.

The only basis for the motion to retransfer the case was that the district judge had ruled that Hillery could not be served under Wisconsin's long-arm statute, thus forcing the Wilds, unless the case was retransferred, to split their suit between Wisconsin (all the defendants except Hillery) and Louisiana (Hillery). After the judge ruled, the Wilds did bring a suit against Hillery in Louisiana, but it was promptly transferred to Wisconsin (and is pending before the same district judge), because in the interim a Wisconsin state court ruling in one of the cases arising from the accident interpreted Wisconsin's long-arm statute in a way that makes clear that Hillery is within the statute's reach after all. Forgues v. Heart of Texas Dodge, Inc., No. 99CV0952, slip op. at 2 (Wis. Cir. Ct. Nov. 5, 2001). Although an unpublished opinion of a trial court, and so hardly an authoritative guide to the law of Wisconsin, the parties do not question its soundness.

It is very difficult in these unusual circumstances to get excited about the prospect of bouncing this three-year-old case back to Louisiana, but cf. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970), even apart from the fact

that, since venue cannot be laid in Louisiana, the case would have to be dismissed or transferred elsewhere. Supposing the district judge had gotten Wisconsin law right when she ruled on Hillery's motion to dismiss for want of personal jurisdiction (that is, supposing she had anticipated the decision in Forgues), Hillery would be a party to the present case and the claim against her, which is indistinguishable from that against her company, Subscription Plus, would have gone down the drain with that claim. As it is, the claim against her remains alive in the district court--if barely, since the defendants have moved to dismiss it as barred by res judicata. Still, the plaintiffs are no worse off, or, in any practical sense, differently situated, than if the district judge had not mistakenly dismissed Hillery, thus raising the retransfer issue.

But in any event we do not agree with the plaintiffs that a transfer under section 1406(a) (or the closely parallel section 1404(a), which, under the same conditions as section 1406(a), see Van Dusen v. Barrack, 376 U.S. 612, 622 and n. 13 (1964); Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1104 n. 5 (5th Cir. 1981), permits transfers for the convenience of the parties even if venue is proper in the district in which the suit was originally filed) is invalid just because one defendant in a multidefendant case (there were 13 defendants before Hillery was dismissed) cannot be served either directly or under a long-arm statute in the transferee district. Were there only one defendant and he or she could not be served there, it would be plain that the suit "could not be brought" there and so transfer would be improper. Van Dusen v. Barrack, supra, 376 U.S. at 621; Ellis v. Great Southwestern Corp., supra, 646 F.2d at 1107; 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure sec. 3827, pp. 274-75 and n. 30 (2d ed. 1986). For consider the implications: A sues B in a district in which venue is improper, meaning (among other things) that B does not reside and cannot be served there, and the court transfers the case to another district in which B does not reside (in which event B could be served) and cannot otherwise be served; it would be absurd to permit such a transfer. The suit

should instead be dismissed and A forced to sue B somewhere B can be served.

A multidefendant case, this multidefendant case in any case, is different. The 13 defendants are scattered all over the United States. There is (or so the district judge believed when she denied the retransfer back to Louisiana) no federal district in which all could be served. If the case could not have been transferred from Louisiana to Wisconsin, it could not have been transferred anywhere, which means it would have had to be dismissed in its entirety because Louisiana was not a proper venue for any of the defendants, and the Wilds forced to sue maybe in 13 different districts or states. This result would be contrary to the purpose of section 1406(a), which introduced transfer as an alternative to dismissal. As the Supreme Court explained in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962), "the problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn. Indeed, this case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations . . . . The language and history of sec. 1406(a) . . . show a congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice." That is the result for which the Wilds (paradoxically and opportunistically, since they are the plaintiffs) contend.

It is a bad result, not contemplated by Congress; and we conclude that there is no absolute bar to the transfer of a multidefendant suit to a district in which one of the defendants cannot be served. But that leaves the question whether a defendant in a multidefendant suit who cannot be served can be forced to defend in the transferee district or, as most cases hold, must be severed from the rest of the suit and the suit against him either dismissed or (better, to avoid the running of the statute of

limitations) transferred back to the district in which the suit was first filed or to a district in which service upon him is possible. Liaw Su Teng v. Skaarup Shipping Corp., 743 F.2d 1140, 1148 (5th Cir. 1984); Sharp Electronics Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1230 (D.C. Cir. 1981) (per curiam); Relf v. Gasch, 511 F.2d 804, 807-08 and n. 13 (D.C. Cir. 1975); Shutte v. Armco Steel Corp., supra, 431 F.2d at 24; 15 Wright, Miller & Cooper, supra, sec. 3845, pp. 351-53 (2d ed. 1986 & 2002 Supp.). The argument for the latter course, nowhere made in the notably sparse discussions in the cases, is that the transfer statutes do not purport to alter the rules governing personal jurisdiction; and of course the outer bounds of those rules are set by the Constitution. At all events, by dismissing Hillery from the suit, the district judge did what the case law permits.

We move on to the merits, where we can be brief. The nonsettling defendants are Subscription Plus, the dealership that sold the van to Lane, and several of the insurance companies. Since Y.E.S.! was an independent contractor of Subscription Plus, the Wilds could not impute the neg ligence (or worse) of Holmes, Y.E.S.!'s employee, to Subscription Plus. Wagner v. Continental Casualty Co., 421 N.W.2d 835, 844 (Wis. 1988); Snider v. Northern States Power Co., 260 N.W.2d 260, 261 (Wis. 1977); Giffin v. Poetzl, 634 N.W.2d 901, 905 (Wis. App. 2001); Sullivan v. Freeman, 944 F.2d 334, 336 (7th Cir. 1991). There are a number of exceptions to the rule that a principal is not liable for the torts of his independent contractors, but, as explained at length by the district judge, none of them is applicable to this case. And anyway if Holmes had been an employee of Subscription Plus, he would be subject to Wisconsin's workers' compensation law, which preempts tort claims by employees against their employers.

The claim against the dealership is completely frivolous. Lane when he bought the van showed the dealer a valid driver's license and proof of insurance. The dealer had no reason to think Lane would entrust the van to a person who did not have a valid driver's license and was reckless; and so no negligence can be

attributed to the dealer. Bankert by Habush v. Threshermen's Mutual Ins. Co., 329 N.W.2d 150, 153 (Wis. 1983); Halverson by Boles v. Halverson, 541 N.W.2d 150, 153 (Wis. App. 1995); Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir. 1992).

That leaves only the insurance companies. Two of them, Acceptance and Scottsdale, were the liability insurers of Subscription Plus and of Hillery, respectively. Wisconsin permits a direct action regardless of whether the insured is a party, but only if the insurance policy was issued or delivered in Wisconsin, Kenison v. Wellington Ins. Co., 582 N.W.2d 69, 73 (Wis. App. 1998); Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1092 (7th Cir. 1999) (Wisconsin law), which neither of these policies was. Otherwise the direct action can be maintained only if and so long as the insureds remain parties. See Wis. Stat. sec.sec. 631.01(1), 632.24; Kenison v. Wellington Ins. Co., supra, 582 N.W.2d at 73. Both Subscription Plus and Hillery were properly dismissed, and out with them went their two insurers.

Progressive was Lane's insurer; Lane, remember, owned the van that crashed as well as owning and controlling Y.E.S.!, which operated the van. But here is where color becomes significant. The van was green; but the policy was written to cover a white van that had been purchased earlier but was out of service. The green van was bought in January 1999; the policy on the white van became effective on March 5; and the accident occurred on March 25. The policy provides coverage for replacement vehicles but only "for a period of not greater than 30 days without notification to us." The purpose is to enable the policy holder to obtain coverage without having to buy a separate policy while enabling the insurance company to adjust the premium retroactively to reflect any greater risk created by the substitution. Lewis v. Bradley, 97 N.W.2d 408, 411 (Wis. 1959); Rabatie v. U.S. Security Ins. Co., 581 So. 2d 1327, 1329-30 (Fla. App. 1989) (en banc) (per curiam). The plaintiffs argue that the 30 days did not begin to run until March 5, even though the replacement vehicle had been in service for more than a month before then. We think that either the green van was never

covered, either because it was acquired before the policy took effect, see United Farm Bureau Mutual Ins. Co. v. Elder, 427 N.E.2d 127, 129 (Ill. 1981); Patrick v. Thines, 590 N.E.2d 850, 852 (Ohio App. 1990); cf. Offerdahl v. Glasser, 93 N.W.2d 362, 363 (Wis. 1959), or because it was in service for more than 30 days without notification to the company; or that, at the very least, notification was due at the time the policy took effect. An insurance company does not want to insure indefinitely a vehicle of which it has no knowledge whatever.

The deficiency in the parties' jurisdictional statements is inexcusable, just as in Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 747-48 (7th Cir. 2001), where we reprimanded the lawyers for both sides. As in that case, so in this one, the lawyers disregarded an utterly clear jurisdictional provision, here regarding the citizenship of corporations, and are hereby reprimanded.
Affirmed.