Harold P. Kelly, J.
This action for declaratory judgment was tried before the court without a jury on February 27, 1968, February 29, 1968 and March 1, 1968. The plaintiffs bring this action to secure an adjudication of their rights under an automobile liability policy issued by the defendant, the Aetna Casualty & Surety Company, to the plaintiff Elton Sheffield. The material facts developed in this action are substantially undisputed by the parties.
It appears that one Eva Champlin was the owner of a 1960 Rambler automobile that was insured by the defendant Lumbermens Mutual Casualty Company. Sometime in late 1964, she moved into the home of her sister, Ella Sheffield, in Mayville, New York, for the purpose of caring for her sister who was in *561 her terminal illness. However, Eva Champlin died on July 17, 1965, before her sister, Ella Sheffield.
Eva Champlin left a will which after making provisions for the payment of her debts and funeral expenses contained a residual clause marked paragraph Second which provided as follows: “ Second: I give, devise and bequeath all of the rest, residuary and remainder of my property, whether real, personal or mixed and wheresoever situate or located or over which I may have a power of disposition at the time of my death, hereinafter called my residuary estate, to my sister, Ella M. Sheffield, now of Elm Flat Road, R. F. D., Mayville, New York, to be hers absolutely.”
Eva Champlin’s will also named her sister, Ella Sheffield, as executrix and Ella’s son, Elton Sheffield, as ‘1 alternate executor ”.
After Eva’s death and on about July 18, 1965, Elton Sheffield and his wife Shirley Ann Sheffield moved from their home in Westfield, New York, into the home of Ella Sheffield in Mayville, New York, to continue the care of Mrs. Sheffield. On August 4, 1965, Ella Sheffield was appointed executrix of the estate of Eva Champlin.
On November 1, 1965, Ella Sheffield died. She left a will which provided for the payment of her debts and funeral expenses and left the remainder of her estate to her son Elton Sheffield, in the following clause: ‘1 Second: I give, devise and bequeath unto my son, Elton P. Sheffield, all the rest, residue and remainder of my estate, both real and personal, in any form or nature, wherever it may be situated.”
Ella Sheffield’s will named Elton Sheffield as executor of her estate.
Ella Sheffield was buried on November 4, 1965 and on November 5, 1965, while Shirley Ann Sheffield (Elton’s wife) was driving the Rambler automobile, it became involved in a serious accident with a Pennsylvania Railroad Company train at a railroad crossing. Several passengers in the automobile were killed and others were injured. Two death actions have been instituted against the Pennsylvania Railroad Company, Shirley Ann Sheffield and the estate of Eva Champlin, which actions are still pending.
At the time of the happening of the accident on November 5, 1965 and for some time prior thereto, Elton- Sheffield was the registered owner of a Pontiac automobile. The Aetna Casualty & Surety Company had issued to Elton Sheffield, its policy of insurance covering this Pontiac automobile for the period from August 24,1965 to August 24,1966. The I960 Rambler automo *562 bile was being operated by Shirley Ann Sheffield with the knowledge and consent of her husband, Elton Sheffield at the time it was involved in the accident with the Pennsylvania Railroad train.
From the time Eva Champlin moved into the home of Ella Sheffield, both Elton and Shirley Ann Sheffield had used the Rambler automobile not only to do errands for Eva Champlin and Ella Sheffield, but also for their own use.
On the date of the accident, the 1960 Rambler automobile was still registered in the name of Eva Champlin.
Elton Sheffield was appointed executor of the estate of Ella Sheffield on November 15, 1965 and on November 24, 1965 he was also appointed “successor” or “alternate” executor of the estate of Eva Champlin.
Notice of the accident of November 5, 1965 was given to the Aetna Casualty & Surety Company shortly after the accident and by November 8, 1965, Aetna had started to investigate. A number of letters were written to the Aetna Casualty & Surety Company during the policy period by attorney William Fredel in behalf of Elton Sheffield and his wife Shirley Ann Sheffield. .These letters in substance requested Aetna to provide coverage •to Elton Sheffield and his wife Shirley Ann Sheffield, and that the company provide a defense for them in the actions instituted against Shirley Ann Sheffield. Aetna has never replied to these letters but has elected to remain silent.
Shirley Ann Sheffield was a ‘ ‘ named insured ’ ’ under the definitions contained in the Aetna policy and was therefore entitled to the same coverage as her husband, Elton Sheffield, under the Aetna policy.
It is the opinion of the court that coverage was afforded Elton Sheffield and Shirley Ann Sheffield on November 5, 1965 under the provisions of the Aetna policy that provides coverage to the insured on a newly acquired automobile. This coverage, afforded a “named insured” is found in the following paragraph: “ 2. Premium — If the named Insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the Company during the policy period of such change. Any premium ¡adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the Company. •The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a .description thereof.” (Italics added.)
The purpose of these so-called “ automatic ” insurance clauses is to maintain coverage to the insured during the period when *563 the insured acquires either a replacement or additional automobile and the time when he reports the acquisition of the new automobile to the insurer. (34 ALR 2d 936.)
All the evidence adduced leads to the conclusion that Elton Sheffield had taken complete and exclusive control and possession ,of the Eambler automobile after the death of his mother on November 1,1965. If we examine Elton Sheffield’s attitude and conduct toward the Eambler, we come to the conclusion that he had assumed ownership of this vehicle in his individual capacity and not as executor on the date of the accident. On page 66, .plaintiffs’ Exhibit 6, the following testimony of Elton Sheffield clearly shows his attitude:
“ Q. After your mother’s death, who drove this car? A. Myself, myself and Shirley, and whoever we give permission to drive.
“ Q. Did you treat this car as your own.car? A. Yes, I drove it when I pleased, and so did my wife, and —
“ Q. Did your wife have a set of keys? A. Yes, she did.
“ Q. Her own set of keys? A. Yes.
“ Q. And, you had your set of keys? A. Yes.
“ Q. Does your wife own any car? A. No, she doesn’t own any car.
“ Q. Do you own a car in your own name. A. Yes, I owned the car in my own name.
“ Q. At the time of this accident? A. Oh, yes.
“ Q. Other than the 1960 Eambler? A. Yes, I didn’t understand you.”
The policy of insurance issued to Elton Sheffield by the defendant, Aetna, in the clause (“ Conditions — 2. Premium” set forth above) providing for coverage of a newly acquired automobile, required the named insured to ‘ ‘ inform the Company during the policy period of such change ”. The policy period did not expire until August 24,1966 and although it might ,be argued that Elton Sheffield did not formally notify the defendant Aetna, of his ownership of the Eambler, there is no question that Aetna was informed shortly after the accident and within the policy period that Elton Sheffield had acquired ownership of the Eambler automobile at the time of the accident.
In particular the letter of January 19, 1966, by attorney William J. Fredel addressed to Aetna Insurance Company specifically refers to the Eambler automobile as 1 ‘ being owned by bim (Elton) ” and would be a sufficient notice of change of automobiles, if such notice was in fact required to maintain coverage.
*564 The law, however, does not require such notice of change ‘ ‘ where the accident takes place within the notice period but before any notice has been given, it is generally held that the requirement of notice is a condition subsequent rather than a condition precedent, and that such coverage is automatically effected upon delivery of the new automobile and remains in effect until the end of the specified period, irrespective of whether notice has been given.” (30 N. Y. Juris., Insurance, § 1237, p. 676; citing Schaller v. Aetna Cas. & Sur. Co., 280 App. Div. 988; Melendez v. General Acc. Fire & Life Assur. Corp., 189 Misc. 392, affd. without opinion 273 App. Div. 960, mot. for lv. to app. den. 274 App. Div. 763, mot. for lv. to app. den. 298 N. Y. 935.)
In the present case it is argued that the “ legal title ” was not in Elton Sheffield on the day of the accident and therefore he was not the ‘ ‘ owner ’ ’ of the Rambler automobile and therefore coverage was not afforded him on the said Rambler as an “ owned automobile ”. This argument loses sight of the distinction between the risk and hazard insured against in the case of liability insurance (which is the type of policy we are dealing with in the instant case) and the requirement of an insurable interest in the property which is necessary to afford coverage in casualty insurance. This distinction for coverage in these two types of insurance is clearly set forth in the following:
‘ ‘ Blashfield, in his work ‘ Cyclopedia of Automobile Law and Practice ’ (Vol. 6, § 3873) says:
“ ‘ The rule requiring possession by the insured of an insurable interest in the property forming the subject matter of the insurance, which prevails generally in casualty insurance, is not applicable to liability indemnity policies.
“ ‘ The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable.’ ” (Pauli v. St. Paul Mercury Ind. Co., 167 Misc. 417, 424.) (Italics added.)
The court has considered the letters of attorney William Fredel addressed to Aetna only for the purpose of their bearing *565 on the question of notice to the insurer. In respect to the exhibits which contain the opinions of the attorneys of Aetna as to the coverage afforded by the subject policy the court has not considered them in any respect in reaching its decision.
In conclusion, it is the decision of this court that there was “ concurrent coverage ” afforded Shirley Ann Sheffield, under the terms of the Aetna policy as provided in Part I under the paragraph entitled “ Other insurance ”, as a “ named insured ” and that the defendant Aetna Casualty & Surety Company is obligated under its policy of insurance issued Elton P. Sheffield for the policy period August 24, 1965 to August 24, 1966 to defend 'Shirley Ann Sheffield in any actions arising out of the accident of November 5,1965 involving the Rambler automobile, now pending or hereafter instituted against her as defendant and to pay any judgments that may be rendered against her .in any such actions, but Aetna shall be required to pay only a one-half share of such judgments and the other one half shall be paid by Lumbermens Mutual Casualty Company to the extent of their policy limits. The same shall apply to the settlement of any claims or causes of actions. Like coverage is also to be given to Elton Sheffield relative to any claim made against him as owner.