AMERICAN FREEDOM INSURANCE COMPANY, Plaintiff-Appellant, v. COREY SMITH *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—02—2343

Opinion filed March 8, 2004.

Schoen, Mangan & Smith, Ltd., of Chicago (Lee J. Schoen and Linda J. Carwile, of counsel), for appellant.

Arthur H. Levinson & Associates, P.C., of Chicago (Arthur H. Levinson, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

The parties to the instant appeal contest the interpretation and application of an automobile insurance policy's "automatic insurance" provision, which offers coverage for newly acquired vehicles for a limited period. The trial court found that the provision provided coverage. We affirm.

The day after his purchase of a second car, and while driving to the office of the insurer of his first car, defendant Corey Smith was involved in an auto accident which resulted in the total loss of the vehicle and injuries to himself and his passenger. Five days later, Smith made a claim under the uninsured motorist provision of the policy he had obtained for his first car. The insurer, plaintiff American Freedom Insurance Company (AFIC), filed a declaratory judgment action against Smith and his passenger, Mark Whittington, in pursuit of a determination that Smith's accident was not covered by the existing policy. On cross-motions for summary judgment, the parties disputed whether the policy had required Smith to provide notice of the acquisition of the Caprice, and whether such notice was given. The trial court found the accident to be covered under the policy.

## BACKGROUND

Smith's policy had been obtained for a 1995 Chevrolet Monte Carlo he purchased early in 1999. The policy offered coverage for an "insured automobile" and its passengers for losses incurred as a result of ac-

cidents with uninsured motorists, and included in its definition of "insured automobile" two provisions pertinent to the instant litigation. The first relevant provision covered an automobile "acquired by the named insured during the policy period, provided it replaces an insured automobile." The second provision focused upon by the parties applied if AFIC insured all vehicles owned by the insured on the date of his acquisition and if "the named insured notifies the Company in writing within 30 days after the date of such acquisition of his election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the Company applicable to such automobile."

According to his discovery deposition, Smith purchased a 1986 Chevrolet Caprice on October 12, 1999, and was involved in an accident in the vehicle the following day. Smith testified that as of the day of the accident, he had not notified AFIC of the purchase of the Caprice, that the Monte Carlo was still working, and that he was "supposed to sell" the Monte Carlo later that week.

Smith apparently made a claim under the Monte Carlo policy on October 18, 1999, although the record before us does not reveal the form or other particulars of that claim. AFIC then filed the action underlying the instant appeal: a complaint alleging that Smith "never submitted any application for insurance coverage" for the Caprice; seeking a declaratory judgment that Smith materially breached his insurance contract "by failing to apply for insurance coverage" for the Caprice; and seeking a judgment that AFIC owed no coverage under the policy to Smith or his passenger, Whittington. The answer filed jointly by Smith and Whittington (who have acted jointly through the representation of the same attorney throughout the trial court proceedings and in the instant appeal) denied that Smith had failed to make any application for insurance for the Caprice, affirmatively alleged that Smith "made a verbal application for insurance coverage" for the Caprice, and admitted that he made a claim for personal injury and property damage. In its assertion of affirmative defenses, the Smith-Whittington answer alleged that Smith "could not apply for insurance" for the Caprice because "the automobile was destroyed and became a total loss" and that he "made every effort possible to apply for insurance coverage" for the Caprice and "was on his way to the insurance agent's office, to apply for coverage when an accident occurred."

AFIC moved for summary judgment, asserting that Smith "had never applied for coverage" for the Caprice. As support for this proposition, AFIC's motion cited testimony from Smith's discovery deposition, in which the subject of Smith's communications with AFIC was addressed:

"Q. Now, on October 13th of '99, you owned both the '95 Monte Carlo and the '86 Chevy Caprice?

A. Yes.

Q. Had you notified anybody at American Freedom Insurance Company of the purchase of the '86 Caprice?

A. No, no.

Q. Okay. Do you remember how many miles were on that '95 Monte Carlo, approximately, if you can remember?

A. 83,000 or something like that.

\* \* \*

Q. That car was on the American Freedom policy, correct?

A. Yes.

Q. Do you remember giving a statement to American Freedom?

A. About the car accident?

Q. Yes. Well, about your policy?

A. Yes.

Q. And about the car accident?

A. No, I do not remember.

Q. I will show it to you. That is a statement.

A. When I called them and explained to them about the accident.

Q. I do not know when you made it. Is that your signature at the bottom of the page?

A. Yes, it is."

The attorney representing AFIC at the deposition asked that the document Smith signed be marked as an exhibit, but no copy of that document has been made a part of the record presented to this court. Upon additional examination, Smith confirmed that both the Monte Carlo and the Caprice were owned by him and operational at the time of the accident. AFIC's summary judgment motion attached its complaint, Smith's policy and declarations page, and the title certificate reflecting Smith's purchase of the Caprice, but was not further supported by any additional admissions, testimony, or other evidence.

Smith and Whittington also moved for summary judgment, asserting that "Defendants are covered by American Freedom Insurance Company's policy because, at the time of the accident, less than 30 days had passed from the date of purchase and Corey Smith still had time to notify the insurance company and insure the car in question," and that "Smith should be excused from not getting insurance coverage on that car subsequently because it was total [sic] loss and there was nothing to insure." The motion attached Smith's affidavit, which averred that the Caprice had been a total loss as a result of the accident, but did not address the issue of Smith's notification to AFIC.

Smith and Whittington included with their motion a supporting memorandum, which contended that "Smith did not notify the insurance company of the purchase of the 1986 Chevy Caprice prior to the accident, but he notified [them] afterwards, when reporting the accident, within the 30 day limit." The parties' replies to the summary judgment motions did not shed further light on the notice issue.

In their oral arguments on the summary judgment motions, the parties initially focused on the interpretation of the "replacement" provision of the policy's uninsured motorist coverage. AFIC asserted that because Smith still owned his first car, the Monte Carlo, the subsequently purchased Caprice could not be a replacement car under the policy. Smith and Whittington responded that the policy had not explicitly required disposal of the first car before the second car could be categorized as a replacement, and that this lack of specificity, at a minimum, created an ambiguity which should have been construed against AFIC, the policy's drafter.

Smith and Whittington also argued that the Caprice, as an additional, newly acquired automobile, was an insured vehicle for purposes of the uninsured motorist provision, and that Smith had invoked the policy's newly acquired vehicle coverage by notifying AFIC of the accident. AFIC's counsel responded, "The problem with the notification is it came after the vehicle was a total loss." AFIC's counsel then cited Smith's deposition admission that he had not notified the company about the purchase of the Caprice. Counsel for Smith and Whittington pointed out that the cited question and answer followed a question which was directed to October 13, 1999, the date of the accident, and argued that Smith's acknowledged failure to notify AFIC referred only to the situation at the time of the accident.

The trial court found that the Caprice was an insured automobile as defined by either the replacement vehicle provision or the additional vehicle provision. In interpreting the replacement provision, the court noted Smith's uncontradicted deposition testimony that he had planned to sell the Monte Carlo within days of the purchase of the Caprice, and found nothing in the policy language which defined "replacement" to include a requirement that the first auto be disposed of before coverage could be applied to the later-purchased car. Turning to the additional vehicle provision, the court observed that if the Caprice had not been a total loss, Smith's notice to AFIC "would have resulted in it being scheduled on the policy, and it would have been covered as an auto policy." Having concluded that the Caprice was an insured automobile under the policy, the court denied the AFIC summary judgment motion and granted the opposing Smith-Whittington motion. This appeal followed.

## DISCUSSION

■ Where the underlying facts are undisputed, the construction of an insurance policy is a question of law that is particularly appropriate for resolution by summary judgment; we conduct *de novo* review of the trial court's judgment in such instances. *Mijes v. Primerica Life Insurance Co.*, 317 Ill. App. 3d 1097, 1100 (2000).

■ The facts relating to the trial court's finding of coverage for the Caprice under the "replacement" provision of the policy are undisputed: although he was planning to sell it in the immediate future, Smith still owned his first car at the time of the purchase of the Caprice, and the first car was still operable. As the trial court noted, the policy language did not specifically define "replacement" or limit the term to those vehicles acquired following the disposal or disability of the first car. In *United Farm Bureau Mutual Insurance Co. v. Elder*, 86 Ill. 2d 339 (1981), our supreme court reviewed similar underlying facts: an insured who intended to dispose of his first vehicle but had not done so at the time of an accident involving a subsequently acquired vehicle, and a policy that did not define the "replacement" term. The court provided guidelines for interpretation of such provisions in the absence of explicit terms, and its guidelines do not permit application of a "replacement" clause if the first insured vehicle remains operable and owned by the insured. "A vehicle cannot be a 'replacement' vehicle under a policy of automobile insurance if the insured retains ownership of the 'replaced' vehicle and if it remains operable. Although the insured may have intended to replace his insured vehicle here, he had not done so by the time of the accident. The second vehicle was therefore an 'additional' vehicle within the meaning of the policy." *United Farm Bureau Mutual Insurance Co. v. Elder*, 86 Ill. 2d 339, 340-41 (1981). In light of this definitive statement of Illinois law, we conclude that Smith's newly acquired Caprice could not be covered under his insurance policy as a replacement vehicle.

The trial court also found coverage for Smith's Caprice under the policy's additional vehicle provision; AFIC contends that this provision is also inapplicable because "[a]t no time did Mr. Smith submit notice, written or otherwise, to American Freedom requesting addition of the newly purchased Caprice to the Policy." The presumption underlying this contention is that Smith could not receive coverage for the Caprice as an additional vehicle if he failed to provide notice of his desire for coverage under the policy. We disagree with this presumption.

■ Insurance policy provisions providing coverage for newly acquired vehicles on the condition that the insured provide notice within a specified period after the acquisition have provoked extensive

analysis by courts and commentators; generally referred to as "automatic insurance" clauses, they have commonly been given interpretations contrary to that advocated by AFIC in the instant case. "Regardless of the issue of notice, the automatic insurance clause is construed as providing a 30-day interim protection in any event. An accident occurring before lapse of such notice period has therefore been held covered, whether or not notice has been given." 6B R. Buckley & J. Appleman, Insurance Law & Practice § 4293, at 182-84. (1979).

Some jurisdictions have held that an accident occurring within the grace period for notification of a newly acquired car, though covered if the insured provided notice before the lapse of the period, would not receive coverage in the absence of such notice. See *Colonial Penn Insurance Co. v. Guzorek*, 690 N.E.2d 664 (Ind. 1997); *Farm & City Insurance Co. v. Anderson*, 509 N.W.2d 487 (Iowa 1993); *Auto-Owners Insurance Co. v. Winter,* 188 Mich. App. 230, 469 N.W.2d 314 (1991). These jurisdictions, however, clearly constitute a minority of those having considered the subject. "The weight of authority from other jurisdictions addressing this issue, almost without exception, holds that in standard insurance policies, the 'automatic insurance' clause extends coverage to the newly acquired vehicle during the grace period even if the insured did not notify the insurer of the replacement or addition." *Barnard v. Fireman's Fund Insurance Co.*, 996 F.2d 246, 248 (10th Cir. 1993). See also *Daniels v. State Farm Mutual Automobile Insurance Co.*, 177 Ariz. 340, 341-42, 868 P.2d 353, 354-55 (App. 1994); *Progressive Casualty Insurance Co. v. Dunn*, 106 Md. App. 520, 527, 665 A.2d 322, 325 (1995); *Badger State Mutual Casualty Co. v. Swenson*, 404 N.W.2d 877, 879 (Minn. App. 1987); *Canal Insurance Co. v. C.I.T. Financial Services Corp.*, 357 So. 2d 308, 312 (Miss. 1978); *Glacier General Assurance Co. v. State Farm Mutual Automobile Insurance Co.*, 150 Mont. 452, 457, 436 P.2d 533, 536 (1968); *State Farm Mutual Automobile Insurance Co. v. Carpenter*, 116 N.H. 783, 784, 367 A.2d 609, 610 (1976); *Sheffield v. Aetna Casualty & Surety Co.*, 57 Misc. 2d 559, 564, 293 N.Y.S.2d 213, 218 (N.Y. Sup. 1968); *McCarty v. Grange Mutual Casualty Co.*, 27 Ohio App. 2d 181, 184-85, 273 N.E.2d 345, 347-48 (1971); *Baker v. Unigard Insurance Co.*, 269 Or. 204, 209-11, 523 P.2d 1257, 1259-60 (1974); *Shelby Mutual Insurance Co. v. Kistler*, 347 Pa. Super. 222, 225-26, 500 A.2d 487, 489-90 (1985); *Palmer v. State Farm Mutual Automobile Insurance Co.*, 614 S.W.2d 788, 790-91 (Tenn. 1981); *Auto-Owners Insurance Co. v. Rasmus*, 222 Wis. 2d 342, 353-54, 588 N.W.2d 49, 54 (App. 1998).

In support of its interpretation of the automatic insurance clause, AFIC cites *Hall v. Country Casualty Insurance Co.*, 204 Ill. App. 3d 765, 777 (1990), where the Second District Appellate Court, in contrast

to the majority approach, held that an insured's failure to provide notice of a vehicle acquisition within the policy's defined grace period precluded coverage for an accident occurring before the lapse of the period.

In the First District, however, the majority interpretation has been adopted. " 'Under the clear import of such a provision, the automatic coverage becomes effective immediately upon the replacement and continues for a period of thirty days. The giving of the notice is not a prerequisite to coverage during that period. If the notice is not given during the thirty-day period, the coverage terminates at the end of such period. But the automatic coverage protects the insured against liability accruing within that period even though no notice of the replacement be given.' " *Sheffer v. Suburban Casualty Co.*, 18 Ill. App. 2d 43, 47 (1958), quoting *Western Casualty & Surety Co. v. Lund*, 234 F.2d 916, 919 (10th Cir. 1956). The policy at issue in *Sheffer*, like Smith's policy in the instant case, mandated notification of either a replacement or an additional vehicle within 30 days; the *Sheffer* court nonetheless held that an accident involving an additional vehicle within the notice period was covered despite a lack of notice to the insurer. 18 Ill. App. 2d at 47-48.

In *Hall*, the Second District Appellate Court did not discuss *Sheffer*, the majority interpretation of automatic insurance provisions, or its rationale for declining to follow either. *Hall* thus offers no basis for a conclusion that *Sheffer* should not be considered controlling precedent in this jurisdiction. We accordingly adhere to the majority interpretation of standard automatic insurance clauses and hold that Smith's accident, because it occurred within the policy's grace period, was covered by the policy.

Additionally, we are not persuaded that adoption of the minority interpretation would require a different disposition of the instant appeal. AFIC's argument to this court asserts that Smith was required to give notice and that he failed to do so. However, the trial court found that Smith did give sufficient notice. AFIC has not demonstrated that this finding was erroneous.

The language of Smith's policy provided that he could receive coverage for a newly acquired automobile if he notified AFIC in writing of "his election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the Company applicable to such automobile." In our view, a request by Smith for an extension of the policy's benefits to the losses resulting from the Caprice accident would satisfy the requirements of this provision; his postaccident claim was just such a request. See *Rabatie v. U.S. Security Insurance Co.*, 581 So. 2d 1327, 1331 (Fla. App. 1990) ("'[T]he letter

requesting payment of the claim must be construed as making the coverage request").

AFIC contends that Smith's deposition testimony and trial court pleadings constitute concessions that he made no such request. We disagree. As recounted above, Smith's discovery deposition included the question, "Had you notified anybody at American Freedom Insurance Company of the purchase of the '86 Caprice?" and his answer, "No, no." Because the question immediately preceding this exchange was directed to the state of Smith's affairs as of the date of the accident, the trial court interpreted Smith's answer to be similarly date-specific, and not to be a blanket admission of a complete lack of notice. The record before us offers no basis for a conclusion that the trial court's interpretation of Smith's testimony was erroneous.

We find AFIC's reliance upon the Smith-Whittington trial court pleadings to be similarly misplaced. Since those pleadings admitted that Smith "failed to apply for coverage" for the Caprice, AFIC argues that the absence of notice sufficient to trigger the newly acquired vehicle coverage has been conceded. In the trial court, however, each of the parties referred to "application" and "claim" as distinct and independent concepts. AFIC's complaint alleged both that Smith "had never applied for coverage" for the Caprice, and that he made a claim for personal injury and property damage on October 18, 1999. The Smith-Whittington response denied the allegation that Smith had "never" applied for coverage for the Caprice, affirmatively alleged that Smith "made a verbal application for coverage" for the car, and also admitted the allegation that he made the claim for injury and damage. It is thus apparent that, in the trial court, none of the parties interpreted the agreement that Smith had not "applied" for coverage for the Caprice to be a concession that he had failed to provide notification sufficient to trigger the additional vehicle coverage. That interpretation must therefore be rejected here.

The record presented for our review does not definitively establish the precise nature of Smith's postaccident claim for policy benefits: the parties agree that he "made a claim" on October 18, 1999, but have not described the form that claim took; questions and answers at Smith's deposition referred to a document, signed by him, that reported the Caprice accident, but that document's date is not noted, nor does any party identify it as the October 18 claim, and that document was not made part of the record here. The record is also devoid of any production of evidence by AFIC to demonstrate that it did not receive a timely written request for coverage from Smith. Since the trial court found that Smith did give notice sufficient to trigger coverage, and since an appellant bears the burden of presenting a suf-

ficiently complete record of the trial court proceedings to support a claim of error, we must resolve any doubt arising from the nature of the record against AFIC. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

## CONCLUSION

Since Illinois law, as applied in this district, interprets automatic insurance provisions to provide coverage during the defined grace period even in the absence of the insured's notice to the insurer, and since the parties herein do not dispute that the insured's accident occurred during his policy's grace period, the trial court's finding of coverage for the insured's accident was appropriate. Our review of the instant matter would also result in affirmance of the trial court's judgment even if we were to adopt the minority interpretation of automatic insurance clauses, requiring notice during the policy's grace period, since the appellant has not demonstrated the error of the trial court's finding of sufficient notice.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.