2015 IL App (2d) 141248
No. 2-14-1248
Opinion filed September 29, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ADDIE M. O'NEAL-VIDALES, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff and Counterdefendant-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 11-L-0176 |
| | ) | |
| RICHARD L. CLARK, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| (Affirmative Insurance Company, Defendant | ) | |
| and Counterplaintiff-Appellee, and Founders | ) | Honorable |
| Insurance Company, Defendant and Counter- | ) | J. Edward Prochaska, |
| plaintiff). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Burke and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff, Addie M. O'Neal-Vidales, and defendant Richard L. Clark were involved in a motor vehicle collision in Rockford on September 18, 2009.   On May 4, 2011, plaintiff filed a complaint against Clark for personal injuries that she sustained.   Plaintiff filed an amended complaint on August 15, 2012, seeking declaratory judgments that defendants Affirmative Insurance Company (Affirmative) and Founders Insurance Company (Founders) were required to provide policy benefits as a result of the accident.   Affirmative and Founders filed counterclaims

seeking declaratory judgments that they had no duty to provide benefits. The parties later filed cross-motions for summary judgment and proceeded to a hearing.

¶ 2      On May 16, 2014, the trial court declared that Founders had no duty to provide benefits to plaintiff, and it therefore granted summary judgment in favor of Founders. The trial court denied all other requests. Plaintiff appealed the ruling in favor of Founders, and we affirmed. See *O'Neal-Vidales v. Clark*, 2014 IL App (2d) 140549-U. Founders is not a party to this appeal.

¶ 3      Plaintiff and Affirmative subsequently filed their second cross-motions for summary judgment. Following a hearing, the trial court granted summary judgment in favor of Affirmative. Plaintiff timely appealed. We reverse and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5      On September 18, 2009, plaintiff was an employee of the United States Postal Service and she was driving a postal truck during the normal course of her duties. Clark was driving a recently purchased 1991 Chevrolet. Clark had an automobile insurance policy with Affirmative that covered a different vehicle: his 1992 Ford. Clark purchased the Affirmative policy on the Ford through InsureOne Independent Insurance Agency, LLC (InsureOne). Following the accident, plaintiff filed a claim with Affirmative for her personal injuries. Affirmative denied the claim on the basis that Clark's Chevrolet did not meet the definition of an "insured auto" under the policy.

¶ 6      Under the policy, an "owned auto" was an "insured auto." The provision defining an "owned auto" stated as follows:

> "Owned auto means:
>
>        (a)   a motor vehicle owned by you and identified on the Declarations of this policy; and

(b)   a newly acquired motor vehicle of which you you [*sic*] obtain ownership during the policy period and regarding which we are notified in writing, no later than 30 days after acquisition, of your election to make this and no other insurance policy applicable, and;

(1)   the newly acquired motor vehicle replaces another owned auto and neither you nor any resident of your household retains ownership of the replaced owned auto; or

(2)   the newly acquired motor vehicle does not replace another owned auto and we insure all motor vehicles owned by you on the date of such acquisition."

¶ 7    In addition, a separate section of the policy contained the following condition:

"3.   Coverage of Newly Acquired Vehicles

(a)   If any owned auto is replaced by another owned auto or if an additional owned auto is acquired, coverage applies to that newly acquired motor vehicle only upon and at the time of receipt of written request to add such motor vehicle to the policy.   However, if such request is received no later than 30 days after the date of such motor vehicle's acquisition, and specifies your election to make this and no other insurance policy applicable to such newly acquired motor vehicle, coverage applies to that motor vehicle from the date of its acquisition ***."

¶ 8    The record reflects that Clark was imprisoned on unrelated criminal charges shortly after the accident.   His deposition was taken while he was in custody in Ohio, on June 30, 2014.

¶ 9    Clark testified that he purchased used vehicles on numerous occasions and exclusively used InsureOne to procure his insurance.   Every time he purchased a used vehicle, he called InsureOne and informed a representative that he needed to add or transfer coverage.   He typically carried only liability insurance, because his vehicles were inexpensive; his sole concern was that he was legally insured.   Accordingly, InsureOne would provide him with the least expensive policy available.   Either Clark would pick up his policies and insurance cards at InsureOne's Rockford office or the documents would arrive in the mail.   He could not recall having policies issued from any insurance company other than Affirmative.

¶ 10    Clark purchased the Chevrolet from a private owner.   He paid $500 cash and the seller provided a signed title.   Clark recalled that the transaction occurred either one or two days before the accident with plaintiff.   At some point before the accident, he called InsureOne and informed a representative that he had acquired the Chevrolet, which was meant to be an additional vehicle and was not meant to replace the Ford.   Clark told the representative that he wanted the Chevrolet added to his policy on the Ford.   He remembered giving the representative the Chevrolet's description and vehicle identification number.   He also remembered being told, "We got you.   It's insured.   Just go get your plates."   Clark later reiterated that the representative had told him, "You're fine.   We got it.   We got everything. It's taken care of.   We'll send you the paperwork."

¶ 11    Clark was asked if he ever called Affirmative regarding insurance on the Chevrolet.   He answered that he had called the number on the insurance card that he had been given when he insured the Ford.   Clark was then asked if he regarded InsureOne as his insurance agency, to which he responded, "[y]eah, that's—you just call the InsureOne and they take care of it," adding, "it's got to be an agency of some kind."   When asked if he remembered making a

written request to Affirmative for insurance on the Chevrolet, Clark responded, "[n]o, I would just call InsureOne."

¶ 12    On the day of the accident, Clark was on his way to register the Chevrolet and obtain license plates.   Following the accident, he sold the Chevrolet to a junkyard.   Clark never filed a claim, because he knew that he had only liability insurance, the vehicle was a total loss, and he figured that he would not receive any compensation.   He remembered that Affirmative attempted to contact him regarding the Chevrolet at some point after the accident, but he was more concerned with the unrelated criminal charges by that time, and he "didn't really care" about following up with Affirmative.

¶ 13    Plaintiff and Affirmative filed their second cross-motions for summary judgment following Clark's deposition.   Plaintiff argued that Affirmative's policy covered Clark's Chevrolet under two theories.   Plaintiff first argued that Clark did not yet own the Chevrolet at the time of the accident, because it was never registered (in which case the policy would have covered the Chevrolet under a different provision).   Plaintiff also argued that, if Clark did own the Chevrolet, it qualified for coverage under the policy as a "newly acquired vehicle." Plaintiff acknowledged that Clark never made a written request for coverage, but she asserted that Clark's discussion with the representative from InsureOne justified a finding of coverage. Affirmative argued in its motion that Clark owned the Chevrolet but that it did not qualify for coverage as a "newly acquired vehicle," because Clark "never wrote to or even called Affirmative" to request that it be added to his policy on the Ford.   Affirmative asserted that InsureOne was a "separate entity" and was merely the "retail agency from whom [Clark] purchased the insurance policy."

¶ 14    Following a hearing on December 5, 2014, the trial court granted summary judgment in favor of Affirmative.   The trial court found that Clark owned the Chevrolet at the time of the accident; Affirmative's policy contained a valid and enforceable requirement that Clark provide written notice within 30 days of the Chevrolet's acquisition to qualify for coverage; Clark failed to provide such written notice; and Clark was not entitled to any indemnity or defense from Affirmative.   Plaintiff filed a timely notice of appeal.

¶ 15    Thereafter, the trial court entered a default judgment against Clark on the issue of liability, awarding plaintiff $59,307.30 in medical expenses, lost wages, pain and suffering, and loss of a normal life, plus court costs.

¶ 16                                   II. ANALYSIS

¶ 17    Plaintiff contends that the trial erred in granting summary judgment in favor of Affirmative, because under Affirmative's policy Clark's Chevrolet was automatically covered for 30 days from the date of the car's acquisition, regardless of whether Clark complied with the policy's written notice requirement.   In support, plaintiff relies primarily on *American Freedom Insurance Co. v. Smith*, 347 Ill. App. 3d 1 (2004), from the First District.   Affirmative counters that plaintiff has forfeited her right to rely on *American Freedom*, by failing to raise the case in the trial court.   In the alternative, Affirmative urges us to disregard the First District's holding in *American Freedom* and instead follow our own holding in *Hall v. Country Casualty Insurance Co.*, 204 Ill. App. 3d 765 (1990).

¶ 18    The record reflects that plaintiff failed to discuss *American Freedom* in the trial court. However, plaintiff clearly raised the issue of whether Clark's Chevrolet was covered by Affirmative's policy.   See *In re Marriage of Schneider*, 214 Ill. 2d 152, 172 (2005) (an issue not presented to the trial court cannot be raised for first time on review).   Therefore, despite plaintiff's

failure to cite the case below, there is no merit to Affirmative's contention that plaintiff has forfeited her right to cite *American Freedom* on appeal. Furthermore, as Affirmative concedes, forfeiture is a limitation on the parties, not on this court. *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 377-78 (2008). *American Freedom* would undoubtedly have come to our attention during our research on this issue.

¶ 19　　As discussed, this appeal is taken from the trial court's order granting Affirmative's motion for summary judgment and denying plaintiff's motion for summary judgment. Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). "Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). By filing cross-motions for summary judgment, the parties in this case agreed that no factual issues existed and they invited the court to decide the questions presented as a matter of law. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010); *Daniel v. Aon Corp.*, 2011 IL App (1st) 101508, ¶ 17. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "The interpretation of an insurance contract and the entry of summary judgment present questions of law that are reviewed *de novo* without any deference to the trial court's determinations." *Schuster v. Occidential Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 15.

¶ 20    In construing an insurance policy, the reviewing court's primary function is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). The court must construe the policy as a whole, including considerations of the type of insurance at issue, the risks undertaken, the risks purchased, the subject matter that is insured, and the purposes of the entire contract. *Id.* The clear and unambiguous terms of an insurance policy are given their plain and ordinary meanings, while ambiguous terms are construed strictly against the drafter of the policy and in favor of coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992). Additionally, "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997); see *Thompson v. Country Mutual Insurance Co.*, 319 Ill. App. 3d 158, 160 (2001).

¶ 21    In the present case, the Affirmative policy provided automatic coverage for a newly acquired vehicle "of which" Clark obtained ownership during the policy period and "regarding which" Affirmative was "notified, in writing, no later than 30 days after acquisition," of Clark's election to make the policy applicable to the newly acquired vehicle. The provision contained an additional requirement that automatic coverage would attach to the newly acquired vehicle if Affirmative insured all of the vehicles that Clark owned on the date of acquisition.

¶ 22    A separate section of the policy included a condition that coverage applied to a newly acquired vehicle "only upon and at the time of receipt of written request to add such motor vehicle to the policy." That separate section also stated that, if such a request were received "no later than 30 days after the date of such motor vehicle's acquisition," and if such a request specified Clark's "election to make this and no other insurance policy applicable to such newly

acquired motor vehicle," coverage would apply to the newly acquired vehicle from the date of its acquisition.

¶ 23    Affirmative does not dispute that the accident occurred within 30 days of Clark's acquisition of the Chevrolet.   Moreover, Affirmative does not dispute whether Clark obtained ownership of the Chevrolet during the policy period covering his Ford, or whether Affirmative insured all of the automobiles that Clark owned on the date he acquired the Chevrolet. Therefore, our review is limited to a consideration of the policy's notice requirement, as set forth in the two provisions discussed above.   In its written finding, the trial court concluded that the policy contained a "valid and enforceable requirement" that Clark "must provide written notice to Affirmative within 30 days of purchasing the vehicle" if he wanted to add coverage for the Chevrolet.   The trial court found that Clark "failed to provide written notice to Affirmative that he intended to add the Vehicle to his existing Affirmative insurance policy."

¶ 24    In *American Freedom*, the policy at issue contained a provision with a written-notice requirement similar to the requirement at issue in this case.   The driver in *American Freedom* was involved in car accident the day after purchasing an additional vehicle.  *American Freedom*, 347 Ill. App. 3d at 3.   The policy on the driver's first vehicle provided that, if the insurance company insured all of the vehicles he owned on the date he acquired the additional vehicle, the additional vehicle would automatically be covered "if 'the named insured notifies the Company in writing within 30 days after the date of such acquisition of his election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the Company applicable to such automobile.' "  *Id.*   The driver made a claim under the policy five days after the accident, although the form and particulars of the claim were unclear from the record.  *Id.*   The parties filed cross-motions for summary judgment, disputing whether the policy required the driver to

provide notice of the newly acquired vehicle and whether such notice was given. The trial court found that the vehicle was covered under the policy. *Id.* at 2.

¶ 25 On appeal, the insurance company contended that the newly acquired vehicle was not covered, because the driver failed to submit notice, written or otherwise, requesting that it be covered. The First District noted the underlying presumption of this contention, that the driver could not receive coverage for the additional vehicle if he failed to provide notice of his desire for coverage under the policy. *Id.* at 6. The First District disagreed with the insurance company, stating:

"Insurance policy provisions providing coverage for newly acquired vehicles on the condition that the insured provide notice within a specified period after the acquisition have provoked extensive analysis by courts and commentators; generally referred to as 'automatic insurance' clauses, they have commonly been given interpretations contrary to that advocated by [the insurance company] in the instant case. 'Regardless of the issue of notice, the automatic insurance clause is construed as providing a 30-day interim protection in any event. An accident occurring before lapse of such notice period has therefore been held covered, whether or not notice has been given.' " *Id*. at 6-7 (quoting 6B John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4293, at 182-84 (1979)).

¶ 26 The First District observed that this position constituted the majority rule among those jurisdictions examining automatic-insurance clauses. *Id.* at 7; see *Barnard v. Fireman's Fund Insurance Co.*, 996 F.2d 246, 248 (10th Cir. 1993) ("The weight of authority from other jurisdictions addressing this issue, almost without exception, holds that in standard insurance policies, the 'automatic insurance' clause extends coverage to the newly acquired vehicle during

the grace period even if the insured did not notify the insurer of the replacement or addition."); see also *Daniels v. State Farm Mutual Automobile Insurance Co.*, 868 P.2d 353, 355 (Ariz. Ct. App. 1994); *Palmer v. State Farm Mutual Automobile Insurance Co.*, 614 S.W.2d 788, 790-91 (Tenn. 1981) (both adhering to the majority rule that timely notification of a newly acquired vehicle is a condition precedent to continued coverage only after the grace period, not during the grace period). The First District also noted that it had previously followed the majority rule in *Sheffer v. Suburban Casualty Co.*, 18 Ill. App. 2d 43 (1958). *American Freedom*, 347 Ill. App. 3d at 8. Accordingly, the First District adhered to the majority rule and held that the driver's newly acquired vehicle was covered, because the accident occurred within the policy's grace period. *Id.*

¶ 27 Affirmative acknowledges that the circumstances in *American Freedom* are similar to those in the present case. Affirmative argues, nonetheless, that there is no justification to ignore a "clear and concise requirement" that, for the insured to obtain coverage on a newly acquired vehicle, the insured must first provide notice to the insurer. Affirmative asserts that this position is consistent with our own holding in *Hall*.

¶ 28 We agree with Affirmative that our holding in *Hall* appears to follow the strict contractual analysis applied by a minority of jurisdictions interpreting automatic-insurance clauses. See *Colonial Penn Insurance Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997) (holding, "in the case of an unambiguous policy requiring notice to trigger 'automatic' coverage of additional cars, that provision is enforceable and can be invoked to deny coverage if notice is not given"); *Auto-Owners Insurance Co. v. Winter*, 469 N.W.2d 314, 315 (Mich. Ct. App. 1991) (adhering to the plain reading of an insurance policy with a clear notice requirement for coverage on a newly acquired vehicle). However, as will be shown, our holding in *Hall* cannot be viewed as an adoption of the minority view.

¶ 29     The policy considered in *Hall* provided automatic insurance for a newly acquired vehicle " 'only if' " the insured asked the company to insure the vehicle within 30 days after its acquisition.   *Hall*, 204 Ill. App. 3d at 773.   The driver in *Hall* was in an accident on the same day that he acquired an additional vehicle; he claimed that he had notified the insurance company of the accident, by phone, shortly thereafter.   *Id.* at 776-77.   After the parties filed cross-motions for summary judgment, the trial court found that the insurance company was required to provide coverage under the policy.   We noted, however, that the trial court offered no explanation in support of its conclusion.   *Id*. at 770.

¶ 30     On appeal, we granted the insurance company's motion to strike the driver's brief and conducted our review in accordance with the guidelines established in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).   *Hall*, 204 Ill. App. 3d at 772.   In *Talandis*, our supreme court determined that, in the absence of an appellee's brief, a court of review should not serve as an advocate for the appellee or search the record for the purpose of sustaining the trial court's judgment, unless justice requires such action.   Furthermore, reviewing courts should decide the merits of an appeal where the record is simple and the claimed errors are such that they can be easily decided without the aid of an appellee's brief.   *Talandis Construction Corp.*, 63 Ill. 2d at 133.   With these principles in mind, we restricted our review in *Hall* to a determination of whether the vehicle in question fell within the policy's definition of a covered automobile.   *Hall*, 204 Ill. App. 3d at 772.   We concluded that, even assuming that the driver reported the accident within the 30-day grace period, there was "no evidentiary material in the record which support[ed] a finding that the accident report somehow amounted to a request for insurance on the [newly acquired vehicle]."   *Id.* at 777.

¶ 31    Given the circumstances in *Hall*, this court was placed in a situation similar to that of the trial court in the present case.    As shown, the trial court in *Hall* offered no explanation in support of its findings, and the appeal was decided "in the posture of having no appellee's brief."    *Id.* at 772.    Accordingly, as the First District noted in *American Freedom*, our strict contractual analysis in *Hall* included no acknowledgment or consideration of the majority rule.    *American Freedom*, 347 Ill. App. 3d at 8.    Likewise, here, plaintiff failed to direct the trial court to *American Freedom* or, for that matter, to any case stating the majority rule.    Under these circumstances, the trial court can hardly be faulted for applying a strict contractual analysis.

¶ 32    Nonetheless, we are now tasked with determining whether to follow the First District in its application of the majority rule or to follow the strict contractual analysis applied by those jurisdictions in the minority.    It is apparent from our reading of *Sheffer* and *American Freedom* that, although the First District articulated the majority rule in both cases, it offered little by way of explaining the rationale underlying the majority rule.    Hence, we believe that such an undertaking is appropriate here.

¶ 33    We note at the outset that the majority rule has developed, in part, from cases holding that automatic-insurance provisions are ambiguous.    See *Republic Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 527 F.2d 1002, 1004 (4th Cir. 1975) (holding that the automatic insurance provision at issue might "reasonably be read to mean that the application is a condition precedent to obtaining additional coverage subsequent to the thirty day period, but that coverage during such period remains automatically effective"); *Hoffman v. Illinois Nat. Casualty Co.*, 159 F.2d 564, 566 (7th Cir. 1947) (holding that a reasonable person could have assumed from the language in the policy that coverage was automatically transferred on the date of the new vehicle's acquisition without any notice to the insurance company).    The Supreme Court of Iowa

made a similar observation in *Farm & City Insurance Co. v. Anderson*, 509 N.W.2d 487, 490 (Iowa 1993), concluding that the provision at issue in that case was not ambiguous. The *Farm & City* court accordingly declined to follow the majority rule, holding, "The insured's request for coverage is a condition that must be met in order for the newly acquired vehicle to be a 'covered auto' under the policy. We fail to see how a reasonable person could read this provision to mean anything else." *Id.* at 491.

¶ 34    At first glance, the *Farm & City* court's straightforward reasoning seems persuasive. However, the First District's holdings in *Sheffer* and *American Freedom* were based largely on *Western Casualty & Surety Co. v. Lund*, 234 F.2d 916 (10th Cir. 1956), where application of the majority rule was justified on principles aside from ambiguity.

¶ 35    In *Western Casualty*, the policy at issue automatically covered a newly acquired automobile " 'if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date.' " *Id.* at 919. Predictably, the driver was involved in an accident within 30 days of purchasing a replacement vehicle, and the insurance company argued that the replacement vehicle was not covered, because the driver failed to provide notice that he had purchased the replacement vehicle. *Id.* at 918. The *Western Casualty* court observed, however, that the automatic-insurance provision was inserted for the benefit of the insured, providing the insured with automatic coverage of a replacement vehicle, while also preserving the "essentials of insurance" for the insurance company. *Id.* (citing *Home Mut. Ins. Co. of Iowa v. Rose*, 150 F.2d 201, 204 (8th Cir. 1945) (holding that a standard automatic-insurance clause is "intended to meet the necessity for maintaining continuous insurance on cars in the presence of the recognized custom among insured owners of acquiring

other cars by replacements and new purchases during the life of their policies, and is intended to be and is worded so as to afford proper insurance protection to such insured and at the same time to preserve the essentials of insurance for the insurer")). The *Western Casualty* court held in pertinent part:

"Under the clear import of such a provision, the automatic coverage becomes effective immediately upon the replacement and continues for a period of thirty days. The giving of the notice is not a prerequisite to coverage during that period. If the notice is not given during the thirty-day period, the coverage terminates at the end of such period. But the automatic coverage protects the insured against liability accruing within that period even though no notice of the replacement be given." *Id.*

¶ 36 The policy considered in *Sheffer* included an automatic-insurance provision with a 60-day grace period that was otherwise similar to the provision considered in *Western Casualty*. *Sheffer*, 18 Ill. App. 2d at 46. Relying on the above-quoted language from *Western Casualty*, the First District held that the policy in *Sheffer* covered the driver's additional vehicle, because the additional vehicle was purchased within 60 days of the collision in question. *Id*. at 47-48. The First District also cited the above-quoted *Western Casualty* language in support of its holding in *American Freedom*, 347 Ill. App. 3d at 8.

¶ 37 We point out, however, that *Western Casualty* involved a replacement vehicle, whereas *Sheffer* and *American Freedom* involved additional vehicles. The First District disregarded this discrepancy in *American Freedom*, holding, "[t]he policy at issue in *Sheffer*, like [the driver's] policy in the instant case, mandated notification of either a replacement or an additional vehicle within 30 days; the *Sheffer* court nonetheless held that an accident involving an additional vehicle within the notice period was covered despite a lack of notice to the insurer." *Id.*

¶ 38     A similar distinction was addressed in *Birch v. Harbor Insurance Co.*, 272 P.2d 784 (Cal. Dist. Ct. App. 1954), a case often cited in support of the majority rule.   See *Western Casualty*, 234 F.2d at 919; *Hall v. State Farm Mutual Automobile Insurance Co.*, 268 F. Supp. 995, 997 (D.S.C. 1966); *Baker v. Unigard Insurance Co.*, 523 P.2d 1257, 1260 (Or. 1974).   In *Birch*, 272 P.2d at 788, the insurance company argued that the majority rule did not apply unless the newly acquired vehicle was a replacement vehicle.   The *Birch* court agreed that many of the cases cited in support of the majority rule were " 'replacement' " cases, with provisions stating that the automatic insurance of a newly acquired vehicle would be subject, in part, to the condition that coverage of the replaced vehicle would automatically terminate upon the acquisition of the replacement vehicle.   *Id*.; see, *e.g.*, *Merchants Mut. Casualty Co. v. Lambert*, 11 A.2d 361 (N.H. 1940). However, the *Birch* court noted that the provision at issue in that case provided the same automatic-insurance requirements for both a replacement vehicle and an additional vehicle, and accordingly it held that "[n]o good reason appears why the principles applied in the cited cases should not be equally applicable here, since this alternative provision was included in the policy." *Birch*, 272 P.2d at 788.

¶ 39     Like the policies considered in *Sheffer* and *American Freedom*, the automatic coverage in the policy here applied equally to replacement vehicles and additional vehicles.  Thus, for present purposes, we see no merit to the distinction between the replacement vehicle considered in *Western Casualty* and the additional vehicles considered in *Sheffer* and *American Freedom*.   We believe that the rationale to be taken from *Western Casualty* is that standard automatic-insurance provisions are intended to benefit the insured, providing automatic coverage for both types of newly acquired vehicles, while at the same time preserving the "essentials of insurance" for the insurer.  *Western Casualty*, 234 F.2d at 919; see also *Birch*, 272 P.2d at 788 (concluding that,

unless the automatic-insurance provision was inserted in the policy for the "purpose of deception," it was intended to confer some benefit on the insured and could reasonably be interpreted as intending to furnish an additional protection on a temporary basis). We are also mindful that, in Illinois, "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *Koloms*, 177 Ill. 2d at 479.

¶ 40 As has been stated, under the majority rule, "[t]imely notification is a condition precedent to continued coverage *after, not during, the grace period*." (Emphasis added.) *Daniels*, 868 P.2d at 355. Having examined the rationale underlying the majority rule, we must consider whether satisfaction of the notice requirement is nonetheless a justifiable condition precedent to coverage *during* the grace period. During oral argument in the present case, Affirmative maintained that enforcement of the notice requirement is necessary because it helps provide a "snapshot" of the insurance company's exposure at any given time. We do not believe that this justifies a rejection of the majority rule.

¶ 41 Affirmative conceded below that it would have been obligated to cover the Chevrolet if Clark had satisfied the policy's 30-day notice requirement, regardless of whether such notice was given after the accident. It follows, therefore, that by inserting the automatic-insurance provision into the policy, Affirmative contracted to provide coverage during the 30-day grace period. See *Hobby v. Farmers Insurance Exchange*, 537 N.W.2d 229, 231 (Mich. Ct. App. 1995); see also *United Farm Bureau Mutual Insurance Co. v. Elder*, 86 Ill. 2d 339, 341 (1981) (stating that, by inserting a 30-day notice requirement for the acquisition of an additional vehicle, the insurance company agreed to insure an additional vehicle for 30 days after its purchase). As was observed in *Hobby*:

"This is a classic description of the operation of a grace period during which insurance is continued in force until it expires by the terms of the contract, i.e., thirty-one days after acquisition of a replacement vehicle unless notice has been given. Where notice is not given within the thirty-day contractual period, as in this case, the insurance is canceled on the thirty-first day by the terms of the contract, but that does not void coverage agreed upon by the parties for the first thirty days after acquisition." *Hobby*, 537 N.W.2d at 231.

¶ 42    If Affirmative did not wish to accept the risk of temporarily insuring Clark's newly acquired vehicle, the option remained to omit the automatic-insurance provision altogether. See *Birch*, 272 P.2d at 788. But by inserting the provision, Affirmative accepted the temporary risk, thereby conferring a benefit on Clark, while at the same time preserving the "essentials of insurance" for itself. See *Western Casualty*, 234 F.2d at 919; *cf. Pickens v. State Farm Mutual Automobile Insurance Co.*, 144 S.E.2d 68, 71 (S.C. 1965) (observing that grace periods for payment of premiums keep policies in force indefinitely so that past and future premiums can be collected by insurers). Contrary to Affirmative's purported justification, we believe that the overriding purpose of the written notice requirement was to provide Affirmative an avenue by which it could decline coverage for its contracted risk. We do not believe that our application of the majority rule alters or increases Affirmative's risk in any meaningful way. See *Hobby*, 537 N.W.2d at 230.

¶ 43    In sum, having considered the First District's holding in *American Freedom* and the rationale underlying the majority rule, we believe that the majority rule should be applied in the present case. We conclude that timely notification is a condition precedent to continued coverage only after the policy's grace period, not during the grace period. Because the accident in this case occurred within the grace period, the Chevrolet was covered by the policy.

¶ 44    Additionally, we note that we would have reversed the trial court's grant of Affirmative's motion for summary judgment under either view of automatic-insurance provisions.   Clark was adamant during his deposition that he called InsureOne before the accident and requested insurance on the Chevrolet.   He remembered giving an InsureOne representative the Chevrolet's description and vehicle identification number.   He recalled that the representative told him that the Chevrolet was covered and that any necessary paperwork would be available shortly thereafter.   When asked if he ever called Affirmative regarding insurance on the Chevrolet, Clark answered that he had called the number on the insurance card that he had been given when he insured the Ford.   The record reflects that InsureOne's address and phone number appear on Clark's insurance card.   The policy itself also lists InsureOne's "agent code" beneath the policy number and policy period.   Although plaintiff did not present a fully developed analysis regarding the principles of agency, she asserted in the trial court and in her brief that Clark's Chevrolet was covered by virtue of his correspondence with InsureOne.  See *State Secretary Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991) (independent insurance broker may have apparent authority to act as insurer's agent); *Ratliff v. Safeway Insurance Co.*, 257 Ill. App. 3d 281, 285 (1993) (broker may act as agent of both insured and insurer).   It has been held under the minority view that coverage of a newly acquired vehicle merely "hinge[s] on some action by the insured within thirty days to trigger its retroactive effect."  *Colonial Penn Insurance Co.*, 690 N.E.2d at 670.   Under the circumstances in this case, even if we were inclined to reject the majority rule, we would nonetheless conclude that genuine issues of material fact remain regarding InsureOne's representations to Clark.   See *Pielet*, 2012 IL 112064, ¶ 28 (filing of cross-motions for summary judgment does not establish that there is no issue of material fact).

¶ 45                                      III. CONCLUSION

¶ 46 For the foregoing reasons, we reverse the judgment of the circuit court of Winnebago County and we remand for further proceedings consistent with this opinion.

¶ 47 Reversed and remanded.